**Angel FUENTES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0835–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 21, 1983.

Rehearing Denied Sept. 15, 1983.

Stanley Schneider, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before SMITH, BASS and DUGGAN, JJ.

## OPINION

JACK SMITH, Justice.

The appellant was convicted of murder and a jury assessed his punishment at life confinement. On appeal he asserts three grounds of error.

By his first ground of error, appellant urges that the trial court erred in denying his motion for new trial, thereby refusing to grant "use" immunity to his proffered witness, Joe Hernandez, and compel testimony from him as a defense witness. Such testimony, appellant urges, would provide newly discovered evidence under Article 40.03(6), Texas Code of Criminal Procedure.

Joe Hernandez, a fifteen year old juvenile, was named by four defense witnesses at appellant's trial as the person they saw stab the deceased to death. Hernandez, who has never been charged with the offense, was subpoenaed by appellant and was present at trial, accompanied by his attorney. On the State's motion, he was questioned on voir dire examination out of the jury's presence. He testified to certain preliminary questions which established the facts of his presence at the drive-in theater where the homicide occurred. He further testified that he was dressed similar to appellant, and that he heard the deceased utter insults to his (Hernandez's) sister, her female companions, and Mexican-Americans in general. Hernandez then invoked his Fifth Amendment right against self-incrimination when appellant's counsel's questions focused upon his presence and activity near or at the scene of the homicide. The court refused appellant's request to call Hernandez as a witness to compel him to invoke the Fifth Amendment in the jury's presence.

In his motion for new trial, appellant stated that since trial, his attorneys had learned from Hernandez's attorney, Mr. Victor Blaine, that Hernandez told Mr. Blaine two days after the homicide that he fought with the deceased on the night in question at the drive-in theater, stabbed him fatally, and disposed of the weapon, a knife, by giving it to an aunt. Appellant also alleged that Hernandez had maintained this version of the incident consistently from the time of his first consultation with Mr. Blaine; and that Mr. Blaine had stated to appellant's counsel that he believed Hernandez would testify truthfully concerning the incident if given "use" immunity by the court. At the hearing on the motion for new trial, appellant's attorney orally stated the above information as a proffer of Hernandez's testimony and pointed out to the court that Hernandez was then present with his attorney in the courtroom and prepared to testify at the hearing if granted use immunity as to his testimony. The court overruled the motion for new trial.

The law is well-settled in Texas, as in most American jurisdictions, that a trial court has no power to grant immunity to a witness except on the motion of the prosecuting attorney. *Ex Parte Moorehouse*, 614 S.W.2d 450 (Tex.Cr.App.1981).[1] *See also, Ex Parte Muncy*, 72 Tex.Cr.R. 541, 163 S.W. 29 (Cr.App.1914) and annot., 4 A.L.R. 617 (4th Ed. 981), wherein the editors summarily state:

1. See concurring opinion at 452 for history of immunity in Texas.

... there is no authority for the proposition that the defense has an affirmative right to compel the grant of immunity in any instance.

*Id.* at 621. In the instant case, the prosecutor did not request "use" immunity for Hernandez and the court did not err in denying the relief sought. Appellant's first ground of error is overruled.

By his second and third grounds of error, appellant argues that the trial court erred in refusing to grant his request to call Joe Hernandez to testify in the jury's presence, and in denying his motion for new trial for that reason. A review of the testimony heard at trial is necessary to place appellant's request in focus.

The State's two principal witnesses testified that while they were attending a movie at the McClendon Triple Drive-In Theater, in Harris County, on the night of August 4, 1980, a fight broke out between a white male and a Latin-American male. A crowd quickly gathered, and although the two witnesses alternated their attention between the movie and the fight in progress, they saw some of the members of the crowd kick the white male when he fell. They also saw the Latin-American male, whom they later identified as appellant, suddenly flash a shiny object toward the white male, who slumped to the ground. The Latin-American male disappeared as the crowd quickly dispersed. The white male died from two stab wounds to his chest. Neither of the State's eye-witnesses saw an actual stabbing, and neither witness could affirmatively state that the shiny object was a knife.

The State's two eyewitnesses pointed out appellant to police officers whom other bystanders had summoned, and appellant was arrested. No weapon was found. The arresting officers testified that appellant had blood in the palm of his right hand and fresh scratches on his right shoulder, consistent with the wrestling and scuffling in the altercation before the deceased was stabbed. Other State's witnesses, who knew appellant from school, testified that he had threatened and brandished a dagger

at another youth, Greg Montalbo, at the drive-in earlier that evening.

Testifying in his own behalf, appellant denied that he had stabbed the deceased, that he was present at the scene of the stabbing until after its occurrence, or that he had brandished a knife at Greg Montalbo. He further denied that he had blood in the palm of his hand or fresh scratches on his shoulder when arrested, as the arresting officers had testified. Appellant admitted that he had brought a dagger to the movie "for protection."

In contrast with the State's testimony, four defense witnesses, all of whom had come to the movie with appellant, testified that they were present near the scene of the fight. They stated that they knew Joe Hernandez and saw him stab the deceased. They further testified that Hernandez acted alone and that the appellant was in the concession stand area located away from the scene of the stabbing. However, none of these defense witnesses conveyed this information to the investigating police at the scene when the appellant was arrested. Instead, they waited until the next day to go to the police station.

One of these witnesses, Orlando Zacaro, testified that when appellant returned to the area from the concession stand after the stabbing, he had advised appellant to hide his dagger in Zacaro's truck when the two State's witnesses pointed toward appellant. They hoped this action would lessen the likelihood of appellant being arrested. All of appellant's witnesses denied being in the crowd which surrounded the two combatants and kicked the deceased, and all denied knowing the names of any other person present in the crowd except that of Joe Hernandez.

Appellant's 16-year-old sister, Antoinette Fuentes, testified that she was about eight feet distant from Joe Hernandez with a clear view and saw him draw his knife and stab the deceased. She said that she, Hernandez, and Hernandez's sister then ran away to a friend's car and that appellant was not present at the scene until after the stabbing occurred. She later saw her brother arrested but said nothing in his

defense to the police during the investigation at the scene.

Antoinette was taken to the police station that night, where she made a written statement saying that she was at the concession stand and knew nothing of the stabbing, until she returned to her car. In her statement, she alleged that "We told the police all we knew".

She returned to the station the next day and gave a statement that Joe Hernandez stabbed the deceased. She explained that she failed to tell police at the scene and on her first trip to the police station that Joe Hernandez, and not her own brother, had committed the offense, because Hernandez's sister had requested her not to tell the police.

Because Joe Hernandez was accused of the offense by appellant's companions and relatives on the day immediately after the homicide, Police took Hernandez into custody, photographed him, and showed his picture in a photo spread along with other photos to the State's two eye witnesses. Neither witness picked out Hernandez as the assailant, but both made positive identifications of appellant, first in the photo spread and then in a line-up later the same day.

At trial, when Joe Hernandez was questioned on voir dire examination outside the jury's presence, he first stated that he would not be willing to testify. With Mr. Blaine, his attorney, present at his side, Hernandez then testified preliminarily that he had been present at the drive-in on the night of the homicide. He stated that he was wearing a T-shirt with the word "Santana" across its front; that his shirt was not like appellant's shirt which had the words "Z Z Top" across the front. Hernandez further testified without objection, and without asserting his privilege against self-incrimination, that he had seen and overheard a white male insulting his sister, and the young woman with her, as well as Latin-Americans in general, saying "Y'all Mexicans go back to Mexico," and "Y'all sorry mother f_____s," and "Y'all go to bed with you father and mother." He then stated:

I seen my friends messing with this white guy or the white guy was messing with them and he was cussing at them, you know, and when he cussed at them, well I don't know, he made me mad or something. He was drunk or something, because he was staggering.

When Hernandez was asked by appellant's counsel what he then did, his attorney stated that he would advise Hernandez not to answer any further questions concerning the incident for fear that the answers may tend to incriminate him. The court inquired of Hernandez if that was his wish, and Hernandez answered affirmatively. His attorney interposed this same "advice" after each of defense counsel's two further questions. The questions were whether Hernandez became involved in the altercation, and, how long the altercation lasted. Appellant's counsel asked if the court wanted him to continue questioning the witness, "knowing he is going to take the Fifth," and the court stated that defense counsel might state,

... the sum total matter of your questions and then I will allow Mr. Blaine to state for the purpose of the record whether or not Mr. Hernandez will claim his Fifth Amendment right not to testify against himself.

The proceeding continued:

[MR. ROSS]: The next related questions will surround themselves with the fact that Mr. Hernandez was present during the fight, the fact that it proceeded to the northwest portion of that drive-in theater, and I would ask him any number of questions pertaining to his participation or observation of who was involved; one of which would be to Mr. Hernandez: did you see anyone stab and kill the deceased, Louis D. McDonald?

[BY THE WITNESS HERNANDEZ]: No, sir.

[MR. BLAINE]: Your honor, of course—

[THE COURT]: I take it that is the sum total of the subject matter of your questioning?

Appellant's counsel responded that he wanted to find out whether Hernandez knew any of the persons who were present at the fight and whether appellant participated. Hernandez's attorney indicated he would advise his client not to answer the questions. The court then indicated that he would not allow Hernandez to be called as a witness before the jury, and appellant's attorney objected. Appellant's counsel made no request either for immunity for Hernandez or for use before the jury of those answers given by Hernandez without a claim of privilege.

Appellant points out that four defense witnesses identified Hernandez as the man whom they saw murder the deceased. He further alleges that not only their testimony but also Hernandez's testimony on voir dire, outside the presence of the jury, showed Hernandez's presence and his motive to assault the deceased, e.g., revenge for the deceased's insults accusing his sister of incest and calling her vile names, and also for deceased's insults to Mexicans in general.

Appellant acknowledges that the State's vigorous cross-examination of his four witnesses impeached their credibility in varying degrees. Under these circumstances, he urges, it was crucial for the jury to hear, at a minimum, Joe Hernandez's testimony giving such answers as he did make; answers which fixed his presence at or near the scene of the homicide and showed his motive for violence toward the deceased. Appellant urges that such limited testimony by Hernandez, given before he began to assert his Fifth Amendment right to avoid answering other questions, would have strongly supported the testimony of appellant's four witnesses.

Appellant acknowledges that it is well recognized that a defendant may not call a witness to force him to claim his Fifth Amendment right in the jury's presence, such that a jury may speculate as to the witness's guilt involvement. *Horner v. State*, 508 S.W.2d 371 (Tex.Cr.App.1974). However, he urges, there is no prohibition against calling a witness who has indicated he will take the Fifth Amendment as to some questions when it is known he will not take the Fifth Amendment to *all* questions. This total blackout of the witness could have been avoided, appellant suggests, by the Court's action in doing any of the following:

(1) limiting, by instructions to counsel, any further questions beyond those answered on voir dire by the witness before he invoked the Fifth Amendment; or

(2) ordering the witness and all counsel not to mention the Fifth Amendment, and instructing appellant's counsel not to ask objectionable questions; or

(3) presenting the witness's testimony by having the court reporter read to the jury the answers given outside the jury's presence;

■ Although appellant bases his grounds of error upon the Court's refusal to allow Hernandez to take the stand for the limited purpose of testifying as to those matters about which he did not invoke the Fifth Amendment, appellant made no proffer to the trial court of Hernandez's limited testimony on those matters. Instead, he objected broadly to the court's refusal to allow him to call Hernandez and require him to claim his privilege in the jury's presence. Accordingly, the matter now urged on appeal is not before the court for review, since grounds of error on appeal must comport with objections made at trial, or nothing is preserved for review. *Eldred v. State*, 578 S.W.2d 721, 724 (Tex.Cr.App. 1979).

Appellant argues that it was the State's burden, since it opposed admission of the testimony, to state a valid and sufficient reason for the exclusions, citing *Hernandez v. State*, 599 S.W.2d 614, at 617 (Tex.Cr. App.1980). The evidence in question in *Hernandez* was a pen packet admitted over the appellant's objection. *Hernandez* deals with the sufficiency of the complaining party's objection to preserve error in the face of an adverse ruling. Sufficiency of an objection to preserve a claim of error is not at issue here.

Finally, appellant urges that in this conflict between appellant's Sixth Amendment right to compulsory process and the witness' Fifth Amendment right against self-incrimination, the settled construction of the law in Texas should be changed by court interpretation so that a jury can be allowed to hear a non-party witness take the Fifth Amendment as to whether he committed the crime in question.

Appellant cites no criminal law authority as a basis for this proposed change of the settled law. However, he urges the obvious relevance of such testimony. He further points to the practical desirability of having an exception to the prohibition against requiring the witness to claim the Fifth Amendment before a jury. Appellant argues that the exception should apply to the narrow situation presented by the instant case; where the witness whose testimony is sought is neither charged as a party to the offense in question nor accused by the State of any criminal act, but is shown by preliminary voir dire questioning to have had both motive and opportunity to commit the offense.

Appellant notes that in *McInnis v. State,* 618 S.W.2d 389 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.), the defendant, an attorney facing disbarment and the loss of his professional livelihood, was called as an adverse witness and was compelled to assert his privilege against self-incrimination in the jury's presence. Appellant urges that there is an impermissible incongruity when a civil litigant, such as the State Bar in a disbarment proceeding, has a greater right to compel testimony than an accused in a criminal case. He suggests that a reasonable construction of the right to compulsory process under both the Sixth Amendment to the United States Constitution, and Art. I, Section 10 of the Texas Constitution, should afford a criminal defendant at least the same right to compel testimony that a civil litigant presently enjoys.

The reasoning behind the adoption of the civil rules of evidence is different from the reasoning used in the adoption of the criminal rules of evidence. It is not unusual in civil or criminal litigation that evidence may be admissible for one purpose and not admissible for another purpose. In the instant case, most of the preliminary questions asked Hernandez were corroborative of what four other witnesses had testified and were merely cumulative. The conflict between appellant's Sixth Amendment rights and Hernandez's Fifth Amendment rights distinguishes this case from *McInnis.* A further distinction is that the rules of civil procedure permit the calling of the opposing party as an adverse witness, while the defendant may not be compelled to testify in a criminal proceeding.

It may be that at some future date trial courts will be permitted *sua sponte* or on the defendant's motion to grant "use" immunity in limited situations. However, the law is well settled to the contrary at the present time. We hold that the trial court did not abuse its discretion in refusing to require Hernandez to take the stand in the jury's presence, answer preliminary questions, and invoke the Fifth Amendment.

The appellant's second and third grounds of error are overruled.

The judgment is affirmed.

DUGGAN, J., not participating.