**Cyril J. SMITH, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0056–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 27, 1986.

Rehearing Denied April 17, 1986.

James A. Moore, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft, Harris County Asst. Dist. Atty., Houston, for appellee.

Before DUGGAN, DUNN and LEVY, JJ.

## OPINION

LEVY, Justice.

A jury convicted appellant for possession of cocaine, a controlled substance, and the court assessed punishment at seven years confinement.

On October 16, 1982, officers of the Houston Police Department executed a warrant at 2610 Yoakum Boulevard in Houston, directing them to arrest "John James Lampis and other persons who may be found therein and who may be conducting unlawful gambling activities, to-wit, bookmaking, or who may be in the unlawful possession of gambling paraphernalia." They were commanded to search for and seize "any and all gambling paraphernalia."

Upon announcing their presence and entering, the officers discovered Lampis and appellant seated on separate couches with gambling line sheets, betting slips, and other items on a coffee table in front of each. Officers served the warrant and read Miranda warnings. On the coffee table within reach of appellant was found a container containing white powder, later determined to be cocaine, together with a ceramic straw within which was some residual powder. Search of the premises revealed in appellant's bedroom closet a locked bank bag with appellant's business card on it, found next to a set of scales. The officers brought the bag downstairs to appellant and asked if it was his, to which appellant responded affirmatively. They inquired if he had a key. He responded that it was on a ring with his car keys and that his fiancee, Ellen Clare O'Connell, had taken the car earlier that morning. The officer indicated that he would have to open the bag. There is some dispute as to whether appellant expressly consented. An officer then cut open the bag with a knife. The bag was found to contain, among other items, a large quantity of cash, some small ziplock baggies in an envelope with appellant's name on it, more ceramic straws, white powder (later determined to be cocaine), a man's gold identification bracelet with appellant's name on it, and a man's diamond ring.

By his first ground, appellant contends that the trial court erred in refusing to allow him to call defense witnesses Lampis and O'Connell to the stand and in refusing to grant them immunity from prosecution on the basis of such testimony, potentially exculpatory to the appellant.

The basis for this contention is not clear. However, the gist of his argument asserts denial of effective assistance of counsel, due process, and equal protection of the law, although appellant concedes that a witness's Fifth Amendment protection from self-incrimination takes precedence over a defendant's Sixth Amendment right to compel such testimony. Appellant asserts that his rights would have been adequately protected by granting immunity or by allowing the witnesses to invoke their Fifth Amendment rights before the jury.

In Texas, the form of immunity suggested by appellant is governed by statute, under which the court could not have granted such immunity without the joinder of the State. *Ross v. State*, 486 S.W.2d 327, 328–29 (Tex.Crim.App.1972); Tex.Code Crim.P.Ann. art. 32.02 (Vernon 1966).

The appellant did not have the right to interrogate the witness before the jury and have him/her invoke the privilege when each question was asked. *Victoria v. State*, 522 S.W.2d 919, 922 (Tex.Crim. App.1975). Therefore, it was "not error for the trial court to refuse appellant's motion to have the witnesses invoke the Fifth Amendment in the presence of the jury." *Mendoza v. State*, 552 S.W.2d 444, 450 (Tex.Crim.App.1977); *Rodriguez v. State*, 513 S.W.2d 594, 596 (Tex.Crim.App. 1974). The court's permitting such repetitive conduct would have been both unneces-

sarily protractive and improper. *See Mendoza,* 552 S.W.2d at 450.

The record reflects that both witnesses, represented by counsel, testified out of the jury's presence that they would, if called to testify, invoke the Fifth Amendment to each and every question. Counsel also testified that he would advise them to continue to take the Fifth Amendment. Because the privilege was clearly asserted, we perceive no error. *See Victoria,* 522 S.W.2d at 922.

■ Appellant further alleges that the witnesses were prevented from testifying by the force, threats, and fraud of the State's Assistant District Attorney. The record indicates that the State's attorney declared that she would have sought an indictment for possession of cocaine if a witness's testimony amounted to a judicial confession providing probable cause for a charge. There is no indication of record that any force or fraud was used or any threats made beyond that of prosecution in a proper case. Although the record reflects that both the prosecutor and defense counsel at times embraced the adversarial system with a zeal bordering on mutual hostility, the record does not otherwise support appellant's allegations.

■ In view of the competing interests of the Fifth and Sixth Amendments, we cannot conclude that appellant was denied due process, effective assistance of counsel, or equal protection by the trial court's proper refusal to grant immunity. Appellant's first ground is accordingly overruled.

■ In his second ground, appellant complains of the Court's refusal to submit charges offered by the defense on non-exclusive possession.

Although appellant cites no supporting authority, the State points out that in *Gordon v. State,* 686 S.W.2d 241 (Tex.App.— Houston [14th Dist.] 1985, pet. ref'd), an almost identical charge was properly refused. There the Court held that the "requested instruction singled out favorable testimony to himself and, as such, constituted a comment on the weight of the

evidence," *id.* at 243, which is not proper. *See Hawkins v. State,* 656 S.W.2d 70, 73 (Tex.Crim.App.1983).

Appellant's alternative proffer that "possession may be joint or constructive" adds nothing. Joint possession could nevertheless result in appellant's conviction, but failure to find joint possession would not preclude conviction. *See, e.g., Curtis v. State,* 519 S.W.2d 883, 885 (Tex.Crim.App. 1975). The proffered definition appears to address the potential co-extensive culpability of Lampis or O'Connell, neither of whom were tried in this cause. We are unable to determine the error alleged by refusal of this requested charge or that it was "calculated to injure the rights of the defendant," requiring reversal. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). We overrule the second ground.

By his third ground of error, appellant asserts that the indictment should have been dismissed. The thrust of this contention is alleged misuse of the subpoena powers of the grand jury to obtain evidence during the investigation, and absence of evidence presented to the grand jury. Specifically, he challenges evidence relating to call-forwarding information obtained from Southwestern Bell Telephone Company.

■ The record is extensively developed by the expert testimony of a Southwestern Bell employee, by the testimony of the State's Assistant District Attorney who signed the subpoena, and by the prosecutor. The State's attorneys testified unequivocally that no *testimony* was presented to the grand jury, but that evidence was presented as contained in the offense reports.

In *Tarpley v. State,* 565 S.W.2d 525 (Tex. Crim.App.1978), the Court of Criminal Appeals held:

This Court will not go behind the actions of the grand jury to determine whether sufficient evidence existed to justify the return of an indictment. Were we to accept appellant's claim that evidence was presented to the grand jury by the district attorney alone, such would not

constitute reversible error. An indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.

*Id.* at 532 (citations omitted); *see also Crocker v. State,* 573 S.W.2d 190, 204 (Tex. Crim.App.1978). The record does not support appellant's contention that no evidence was presented. It affirmatively reflects that no *testimony* was presented, but that the district attorney actually did present evidence.

■ The call-forwarding information obtained under the grand jury subpoena was the subject of expert testimony. "Call-forwarding" is a service by which a customer may transfer incoming calls to another phone, available for a flat monthly charge. It may be used as often as the customer chooses. No permanent records are kept by the phone company that indicate whether, or how often, the service is activated, or to which number(s) a customer has forwarded calls. The company will record that information only when the security section requests it because the information has been subpoenaed. To obtain the information, a computer is asked to determine if call-forwarding is activated at that precise instant. If the computer determines that the service is activated, further requests must be made to determine the number to which calls are being forwarded. At no time does the computer, through its software, have access to any conversations being held on the line, or indeed to whether the line is occupied at all. "Eavesdropping" is accomplished only through a different mechanical or hardware system. The customer cannot himself obtain any of this information upon request.

In the case at bar, the information was sought for the purpose of determining whether Lampis was conducting alleged bookmaking activities at the service address, or at another location, by activating call-forwarding. Information was reported in the affidavit made the basis of the search warrant that the service was inactive at the times computer verification was made. When verifications were executed, they coincided with the times an informant reported placing bets with Lampis at one of the two numbers registered at that address. At those times, the investigative team was also maintaining surveillance at the residence. Their independant observation was that Lampis's car was parked at the townhouse, and they inferred that Lampis was then at that location. Because the computer reported the service inactive on both phones, no further information was sought by or from the phone company.

At the time in question, the telephone number to which appellant asserts his claim was registered to one Henry Mansfield Hunter or his company, Hunter Services. Hunter employed Lampis in his sanitation supply service, and had maintained a residence at the townhouse with Lampis for business purposes. Appellant and Hunter had apparently entered into an oral agreement whereby appellant assumed financial liability for the rent and utilities at that address when Hunter moved to San Antonio. The utility companies were not notified of the changes, so that Hunter or his company was the customer for billing purposes, although appellant actually paid the bills.

Information obtained through the grand jury subpoena may be summarized as follows: No "wiretapping" or "eavesdropping" was involved. The phone number was registered to Hunter or his company, so that the property rights, if any, in call-forwarding information were not of record in appellant. Because a customer has no right to the information, the information belongs to the phone company, if indeed it belongs to anyone. When the service is not activated, no property rights are being exercised. The information obtained has, at best, a remote bearing on the appellant's indictment, although it was part of the affidavit for a search warrant and was corroborative of other details set forth therein.

The closest authority available on the subject appears to be *Wood v. State,* 573 S.W.2d 207 (Tex.Crim.App.1978), where a

grand jury subpoena was used to obtain information and billing statements from Southwestern Bell on an unlisted phone number registered to a third party. The information so obtained contributed to an exposure of a prostitution ring.[1] The Court of Criminal Appeals held that the defendant had no standing to complain and concluded that she failed to demonstrate that her rights were violated by issuance of the subpoena. *Id.* at 212. The Court noted that even if the grand jury subpoena was an improper substitute for a search warrant, the defendant lacked standing to present such a contention where the records involved did not belong to the defendant. *See id.* at 212.

We therefore overrule the third ground.

■ By his fourth ground, appellant complains of the trial court's refusal to issue an attachment or grant a continuance by reason of the disappearance of the witness Mary Zalesak, whom appellant sought to recall for additional cross-examination. He cites no authority for his assertion that such refusal was fundamental error requiring reversal.

The witness had testified that she had been employed as a secretary by appellant and his father at a time when appellant was living with his father. She further testified that appellant requested her to locate a "head shop" that sold scales capable of measuring in grams. She stated that she called around and located one. She then stated that she later saw a Visa or Mastercard bill for scales. Out of the presence of the jury, she also testified that appellant's sister was, in essence, out to "get" appellant on the matter of their parents' estates. The trial court held such testimony to be irrelevant. She was further cross-examined within the jury's presence regarding whether she had ever observed appellant possessing or using cocaine, to which she responded in the negative. She was excused subject to recall.

Later in the trial, appellant introduced credit card statements through his accountant. The accountant testified that the bills reflected no purchases of scales.

Appellant's tender of proof demonstrated that he would ask Zalesak to recant her testimony, and then again turned extensively to the question of appellant's sister and the pressure she allegedly was exerting because of the estate contests. The trial court permitted the admission of the credit card statements, but refused the motions for attachment or continuance. The scales admitted into evidence were first located during the search next to the bank bag in which cocaine was found. The appellant contends that such testimony was extremely prejudicial because of the court's refusal to permit further cross-examination.

The record indicates that Zalesak's testimony appears adequately challenged by the statements. Furthermore, other evidence contained on and within the bag along with the cocaine affirmatively linked appellant to the contraband. Zalesak's testimony did not significantly contribute to the prosecutor's case. *See Warren v. State,* 514 S.W.2d 458, 465 (Tex.Crim.App. 1974). Finally, appellant fails to demonstrate the relevance or materiality of testimony concerning appellant's sibling rivalry, and cites no authority in support.

Accordingly, the fourth ground is overruled.

■ By his fifth ground, appellant asserts error in the Court's refusal to suppress evidence seized in the search under authority of a warrant directing officers to arrest Lampis "and persons unknown" and to search for gambling paraphernalia.

The affidavit in support of the warrant is extensive and specific. Even discounting the call-forwarding information contained therein, it appears sufficient to justify issuance of the warrant under Tex.Code Crim.P.Ann. art. 18.01 (Vernon 1977 and

---

1. The record owner apparently did not assert any challenge on this basis. *See Etchieson v.* *State,* 574 S.W.2d 753 (Tex.Crim.App.1978).

Supp.1986) and art. 18.02 (Vernon Supp. 1986).

Testimony indicated that the key to the locked bank bag was on a ring containing appellant's car keys. The car (and the ring) were in the temporary custody of O'Connell at the time the warrant was executed. The officers executing the warrant testified that, in their experience, gambling paraphernalia, specifically line sheets, betting slips, and other bookmaking memoranda, are frequently concealed in all types of containers. When executing the warrant, the officers first observed appellant with similar paraphernalia in front of him in the common areas of the townhouse.

Appellant cites no authority for the contention that he was not covered by the warrant, nor does he cite any authority for the contention that he occupied a separate portion of the residence. His factual premises are unsupported by the record.

The fifth ground is overruled.

■■■ By the sixth ground of error, appellant asserts that he was denied effective assistance of counsel, due process, and equal protection of the law by the trial court's denial of a hearing on a motion to disqualify the Assistant District Attorney and refusal of a tender of proof thereafter. Appellant cites no authority for this posture, nor does he offer any plausible basis for the motion.

The many pages of the record preceding the trial court's postponement of any hearing or tender of proof reflect miscommunications, arising apparently from an earlier pretrial conference not recorded. This failure of communications resulted in gradual escalation of hostilities between defense counsel and the prosecutor, eventually entangling the trial judge.

The disagreements commenced with an attempt to reach a stipulation between the State and defense counsel that coincided with a waiver of trial to a jury. Defense counsel's concern, in preparing such a stipulation and waiver, appeared to revolve around a question of how the waiver would affect other matters, relating to both trial and appeal of the instant case, and also matters pending in federal court. The State and trial court understood that the State's proposal was to be researched while the defense understood the State's proposal to be a preliminary draft to which he could suggest modifications. State's withdrawal of the proposal after some time prompted vigorous protests.

The trial court, having determined that no jury waiver was signed, compelled defense counsel to select a jury in order to proceed with the cause the following week.

The sole basis for the motion to disqualify, according to the record, was defense counsel's protests that he had negotiated exclusively with another member of the prosecutor's team. The actual trial prosecutor vigorously denied the assertion and further indicated that the member who had negotiated was under her supervision. In the absence of any authority or tenable foundation for the appellant's contention, and with no subsequent motions or tender of proof preserved for appeal, the sixth ground is overruled and the judgment of the trial court is affirmed.