Mary Jane NORWOOD, a/k/a Mary Jane Ramirez, a/k/a Rusty, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–88–210–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 23, 1989.

Charles A. Hood, Port Lavaca, for appellant.

Mark R. Kelly, Asst. Dist. Atty., Port Lavaca, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant Mary Jane Norwood guilty of delivering more than one-fourth ounce, but less than four ounces, of marihuana. The jury assessed punishment at five years' confinement in the Texas Department of Corrections. We affirm the trial court's judgment.

In May of 1987, Tabitha "Tabby" Vinson, working as an undercover narcotics officer, went to the Golden Alibi Lounge. There, she met Patricia "Trish" McMillan. Vinson and McMillan became friends. On May 27, 1987, Vinson asked McMillan to help her get one-half ounce of marihuana. McMillan told her that she had a friend who could buy the marihuana for Vinson at a cost of fifty dollars. Vinson gave McMillan the money and the next day at 5:30 p.m., she went to McMillan's residence. Shortly after her arrival, appellant came over, and McMillan told her that Vinson wanted some marihuana. Appellant asked Vinson how much she wanted. Vinson told her one-half ounce. Appellant replied that she would have to go check with some people. She left and returned forty-five minutes later with news that she had found somebody with marihuana. However, she needed fifty dollars in "front money" in order to obtain the marihuana. Vinson ordered McMillan to give the fifty dollars to her. She left with the money and returned thirty minutes later with two baggies of marihuana which she handed to Vinson. McMillan's roommate, Otis Hurt, was in the living room most of the time during these events. However, he did not enter into any conversations or activities concerning the marihuana delivery.

By her sole point of error, appellant argues that the trial court erred in refusing her request to grant "use" immunity to Patricia McMillan, an essential defense witness. The record reflects that the State informed the trial court that it intended to call McMillan as a witness and urged the court to grant immunity to her. The trial court denied the request for immunity, and the State did not call her as a witness. After the State rested its case, appellant called McMillan to the witness stand. However, she invoked her Fifth Amendment rights and refused to testify. In open court, defense counsel asked the State's attorney to agree to give McMillan use immunity. The defense attorney maintained that the jury should be allowed to hear McMillan's testimony because it would be exculpatory regarding the offense charged. He also asked the trial court to approve the "agreement" concerning immunity. The State remained silent, and the trial court denied the request.

Defense counsel made a bill of exceptions by dictating into the record information he received from McMillan concerning the marihuana transaction. The bill indicates that: (1) appellant was not present when any money or marihuana changed hands; (2) McMillan never saw appellant give any marihuana to Vinson; (3) McMillan transferred the marihuana to Vinson; and (4) appellant never had a conversation with Vinson regarding the amount or the price of any contraband. After dictating the bill, defense counsel asked the trial court to grant use immunity to McMillan. The trial court denied the request and questioned the State concerning its stand on the request for use immunity. The State indicated that it opposed the request. The defense rested its case without calling any witnesses. Otis Hurt did not testify and his location at the time of trial was not known.

The State's attorney testified that "a lot" of the information contained in the bill of exceptions was akin to what McMillan told him about the marihuana transaction. He also testified that he intended to call McMillan as a witness. However, he explained that giving use immunity to her would not be in the State's "best interests"

should it decide to prosecute her for her involvement in the marihuana transaction.

■ Appellant asserts that her Sixth Amendment rights to compulsory process were violated by the trial court's failure to grant McMillan use immunity for her alleged exculpatory testimony. Her argument, we believe, is premised on the principle announced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), where the United States Supreme Court stated that in the interests of a fair trial, an accused is entitled to exculpatory information in the government's possession. Appellant urges this Court to adopt the five-prong test set out in *Government of the Virgin Islands v. Smith,* 615 F.2d 964, 972 (3rd Cir.1980), establishing when a trial court should properly order use immunity. For the reasons set out below, we decline to follow the Third Circuit in constructing a judicial use immunity rule in this case and find no Sixth Amendment violation by the trial court.

Initially, we note that the Third Circuit's ruling in *Smith* is the minority position in the federal circuits. *See United States v. Thevis,* 665 F.2d 616 (5th Cir.1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982); *United States v. Gleason,* 616 F.2d 2 (2d Cir.1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980); *United States v. Lenz,* 616 F.2d 960 (6th Cir.1980), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *United States v. Graham,* 548 F.2d 1302 (8th Cir.1977); *United States v. Alessio,* 528 F.2d 1079 (9th Cir.1976), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). Even in *Smith,* the Third Circuit recognized the serious intrusion into the powers of the executive branch by requiring a trial court to grant immunity to a witness who has exculpatory testimony to give.

■ Moreover, Texas courts dealing with separation of powers and immunity have generally stated that a district court does not have the authority either to grant use immunity to a witness over the State's objection or to order the State to do so. In *Smith v. State,* 708 S.W.2d 518, 520 (Tex.

App.—Houston [1st Dist.] 1986, pet. ref'd), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 839 (1987), the accused argued that the trial court erred in declining his request to call two witnesses and in refusing to grant them immunity from prosecution on the basis that their testimony was "potentially exculpatory." According to the facts, the witnesses' testimony was apparently unavailable from any other source. *Smith,* 708 S.W.2d at 520. The Court held that in Texas, the form of immunity suggested by the accused is governed by Tex.Code Crim.Proc.Ann. art. 32.-02 (Vernon 1966) under which the trial court could not have granted such immunity without the joinder of the State. *Smith,* 708 S.W.2d at 520. *See also Ross v. State,* 486 S.W.2d 327, 328–29 (Tex.Crim.App. 1972) and *Taylor v. State,* 638 S.W.2d 602, 604 (Tex.App.—Dallas 1982, no pet.) (holding that a trial court, without the State's joinder, has no authority to grant immunity to a witness who asserts his Fifth Amendment right against self-incrimination); *Fuentes v. State,* 662 S.W.2d 19, 20 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) (holding that a trial court has no power to grant immunity to a witness except on the prosecuting attorney's own motion).

Article 32.02 provides that an attorney representing the State may dismiss a criminal case only with permission of the trial court. According to this statute, the *power* to dismiss a criminal case lies primarily with the prosecuting attorney, but the dismissal also requires the consent of the trial judge. *State ex rel. Ownby v. Harkins,* 705 S.W.2d 788, 790 (Tex.App.—Dallas 1986, no pet.); *see also, Wallace v. State,* 145 Tex.Cr.R. 625, 170 S.W.2d 762, 764 (1943).

Finally, under the facts of the instant case, we can find no constitutional basis giving appellant the right to obtain immunized testimony from Patricia McMillan. In *Thevis,* the Fifth Circuit held that an accused has no federal constitutional right under the due process clause of the Fifth Amendment to defense witness immunity even though the testimony the accused seeks to immunize is both exculpatory and

unavailable from any other source. *Thevis*, 665 F.2d at 638–40. The *Thevis* Court gave two main reasons for its holding. First, the Court said that if trial courts had authority to grant or deny immunity to defense witnesses, this task would carry them into policy assessments which are the traditional domain of the executive branch of government. Second, the Court said that the immunity process would be subject to abuse by the immunized witnesses. *Thevis*, 665 S.W.2d at 639. The Court explained that when a witness testifies under a State grant of immunity to matters related to the crime for which the witness is now being prosecuted, the State has "the affirmative duty to prove that the evidence it proposes to use [against the witness] is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972). The Supreme Court stated that the government has a "heavy burden" to prove that its evidence has not been tainted by the immunized testimony. *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665. The *Thevis* Court said that confronting a prosecutor with the choice of either abandoning prosecution of the accused or jeopardizing prosecution of the immunized witness is not a task congenial to the judicial function. *Thevis*, 665 F.2d at 640. Furthermore, the Fifth Circuit noted that the incentive for abuse of the immunity process is great given that a witness, because of immunity, is in a no worse position by testifying, and because of the "heavy burden" placed on the government, the witness may actually improve his legal position by testifying. *Thevis*, 665 F.2d at 640 n. 27.

■ U.S. Const. amend. VI guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." This provision ensures that an accused has subpoena power to summon witnesses so that the jury can hear the accused's version of the facts. *See Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). However, the compulsory process clause does not suggest that an accused has the right to supersede a witness' invocation of his own Fifth Amendment privilege against self-incrimination, or the right to demand that the government shield a witness from the consequences of his own testimony. *United States v. Chagra*, 669 F.2d 241, 260 (5th Cir.1982), *cert. denied*, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982); *see also Washington*, 388 U.S. at 23 n. 21, 87 S.Ct. at 1925 n. 21.

Although in *Autry v. Estelle*, 706 F.2d 1394, 1401 (5th Cir.1983), the Fifth Circuit stated that a constitutional right to immunized testimony might exist to remedy prosecutorial abuse, we find no abuse in the instant case. In order to determine the existence of prosecutorial abuse, the *Autry* Court looked at whether the government's decision to deny use immunity was "made with the deliberate intention of distorting the judicial fact finding process." *Autry*, 706 F.2d at 1401. In the instant case, the State's attorney testified that affording use immunity to McMillan was not in the State's "best interests" if it decided to prosecute her. The State's denial of use immunity to McMillan is not a deliberate intention to distort the fact finding process, but was based on a legitimate prosecutorial concern. Requiring the State to grant use immunity to McMillan would place a "heavy burden" on the State, and could jeopardize the State's case against McMillan if it decided to prosecute her for her involvement in the marihuana transaction.

Under the facts of the instant case, we hold that the trial court did not err in failing to grant use immunity to McMillan simply because she has allegedly exculpatory testimony unavailable from other sources. *See Smith*, 708 S.W.2d at 520; *Thevis*, 665 F.2d at 639. The point of error is overruled.

The judgment of the trial court is AFFIRMED.