David Lee THURMAN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00110–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1993.

Vickie Turko, Houston, for appellant.

John B. Holmes, Houston, for appellee.

Before COHEN, HEDGES and SAM BASS,* JJ.

## OPINION

COHEN, Justice.

This case raises hard questions regarding personal privacy and government power. The issue is whether a grand jury subpoena may be used to obtain relevant medical records of a person suspected of driving while intoxicated. We hold that, under these particular facts, the subpoena did not constitute an unreasonable search and seizure. We nevertheless have deep concerns that using grand jury subpoenas to obtain medical records is a process ripe for abuses that courts are ill-suited to prevent or cure. Because we believe legislation is necessary to prevent these potential abuses, we respectfully suggest that the legislature pass a statute like the one set out in the concurring opinion.

## FACTS

Appellant was charged with driving while intoxicated. He moved to suppress the results of a blood-alcohol test administered by a hospital for medical reasons. After the motion was denied, he pleaded guilty and, as agreed, was sentenced to 180 days in jail, probated for two years, and a $100 fine.

The stipulated facts show that on November 1, 1991, at approximately 2:30 a.m., appellant ran a red light at 60 to 90 miles per hour, lost control, and had a collision. A paramedic smelled alcohol on his breath. Appellant was taken to a hospital where, for medical purposes only, hospital personnel drew blood and tested it for alcohol and drugs. Appellant was not then under arrest or in any kind of temporary custody. The test showed a blood-alcohol content of 0.219 percent and a cannabinoid screen of 0.1. On November 4, the State used a grand jury subpoena to obtain the blood test results from the hospital and then charged appellant with this offense.

Appellant concedes that the State did not withdraw or test his blood, nor did it ask the hospital to do so. Rather, he complains that using the grand jury subpoena to obtain the hospital's record of his blood test results was an unreasonable search and seizure under the fourth amendment of the United States Constitution, article 1, section 9 of the Texas Constitution, and article 1.06 of the Texas Code of Criminal Procedure. He contends that because there was no search warrant and no exception excusing the warrant requirement, the search was unreasonable.

## WAIVER

Initially, the State contends appellant waived the point because the record does not include the grand jury subpoena. The State

---

* The Honorable Sam H. Bass, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

relies on *Baldree v. State*, 784 S.W.2d 676, 684–85 (Tex.Crim.App.1989), *Haynes v. State*, 468 S.W.2d 375, 377–78 (Tex.Crim.App. 1971), and *Dusek v. State*, 467 S.W.2d 270, 271–72 (Tex.Crim.App.1971). Those cases are distinguishable because they did not involve grand jury subpoenas. Those defendants contended that affidavits supporting their arrest warrants did not show probable cause. To decide that issue, the affidavits were essential. That is not so here. There is no affidavit or probable cause requirement for a grand jury subpoena. Moreover, the State stipulated that the hospital record was obtained with the grand jury subpoena. Finally, appellant does not challenge the particular subpoena. Rather, he challenges the State's ability to use any grand jury subpoena to obtain his medical records. We do not need to see this particular subpoena to decide that issue. Because the subpoena's substance is not in dispute, we hold that appellant did not have to include it in the appellate record.

## CAN APPELLANT COMPLAIN ABOUT A SUBPOENA FOR EVIDENCE HE DID NOT POSSESS?

The record subpoenaed in this case was neither owned nor possessed by appellant. A number of cases have held that there is no reasonable expectation of privacy in objects or information voluntarily turned over to third parties. *See United States v. Miller*, 425 U.S. 435, 442–44, 96 S.Ct. 1619, 1623–25, 48 L.Ed.2d 71 (1976); *State v. Comeaux*, 818 S.W.2d 46, 53 n. 8 (Tex.Crim. App.1991); *Wood v. State*, 573 S.W.2d 207, 212 (Tex.Crim.App.1978); *Smith v. State*, 708 S.W.2d 518, 522–23 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Both *Wood* and *Smith* involved grand jury subpoenas for records of telephones that were not registered to the defendant. Here, appellant seeks privacy for his own records, not somebody else's. In *United States v. Miller*, the defendant sought to quash a grand jury subpoena for his bank records. We believe that medical records are entitled to more privacy than bank records and phone records. Moreover, as the *Comeaux* court stated, the rule in *Miller* pertains to objects or information *voluntarily* turned over to third parties. 818

S.W.2d at 53 n. 8. A decision to use a bank may be voluntary. A decision to use a hospital for emergency care is not. We conclude that appellant did not surrender standing to assert his privacy rights when he entered the emergency room.

## THE LAW BEFORE SEPTEMBER 1, 1986

Appellant relies on *State v. Comeaux*, 818 S.W.2d 46 (Tex.Crim.App.1991). Comeaux drove while intoxicated on July 20, 1986. *Id.* at 54 n. 1 (Campbell, J., concurring). The date is important because the law then in effect concerning the doctor-patient privilege was more favorable for Comeaux than it was when appellant drove drunk. The facts were also more favorable to Comeaux.

Comeaux was hurt in car accident and taken to a hospital. His doctor ordered that a blood sample be drawn and tested for medical purposes only, but the doctor did not order a blood-alcohol content analysis. 818 S.W.2d at 48. Suspecting Comeaux of DWI, the police asked the nurse to give them some of his blood to test for alcohol content, but she refused. The police then produced a document falsely stating that Comeaux was required to give a blood-sample, and they ordered the nurse to comply. *Id.* at 49. She did, the State tested the blood at its laboratory, and then charged Comeaux with DWI. *Id.* at 49–50. The trial judge, the court of appeals, and the Court of Criminal Appeals all held that the seizure and testing amounted to state action and was an unreasonable search and seizure.

The facts here are different. Appellant concedes there was no state action in either drawing or testing his blood. That was done by the hospital acting alone, solely for medical purposes, and with his consent. The only state action he complains of is the grand jury subpoena. A grand jury subpoena plainly constitutes state action, and may amount to an illegal seizure. *See Boyle v. State*, 820 S.W.2d 122, 129–30 (Tex.Crim.App. 1989). Nevertheless, appellant cannot prevail.

Comeaux obtained relief because he established "that he had a legitimate expectation

of privacy in the invaded place or property, and that this expectation of privacy is one that *society* is prepared to accept as reasonable." 818 S.W.2d at 51 (emphasis in original). The court found that such expectations of privacy "by law must have a source outside of the fourth amendment either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* at 51–52; see also the excellent discussion of *Comeaux* and related issues in Neil C. McCabe, *Legislative Facts in State Constitutional Search Analysis,* 65 TEMP.L.REV. 1229 (1992).

■ The court found that Comeaux, personally, had a reasonable expectation of privacy because he gave his blood only to receive medical help, with no intention of allowing it to be used for any other purpose. The court wrote:

> Common sense dictates, in this age of blood testing for everything from HIV infection to drug use, that a person does not assume that, by giving a sample of blood for private testing, that blood sample could then be submitted to the State, or to any other person or entity, for a purpose other than that for which it was given.

818 S.W.2d at 52. We assume that appellant had the same personal, subjective expectation of privacy. The next issue is whether appellant's subjective expectation is one that society is prepared to accept as reasonable.

The court found that Comeaux's expectation was one society considered reasonable, based on three factors: 1) Comeaux's doctor testified it was improper for a doctor to give away a patient's blood without the patient's consent; 2) the doctor testified that Comeaux signed a consent form that was tantamount to a confidentiality agreement; and 3) Texas law before September 1, 1986, made such medical records confidential by prohibiting a health care provider from releasing them. 818 S.W.2d at 52 (citing the Medical Practice Act, TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.08(b), which then provided a doctor-patient privilege in criminal cases).

None of these factors showing society's approval of the privilege is found in this case. No witness testified regarding the customary medical practice, no confidentiality agreement was presented, and most important, the statute that formerly granted confidentiality has been repealed and replaced by a rule of evidence that totally eliminates the physician-patient privilege in criminal cases. The author of the rule of evidence was the Texas Court of Criminal Appeals.

"There is no physician-patient privilege in criminal proceedings." TEX.R.CRIM.EVID. 509. Rule 509 took effect September 1, 1986. It stands in stark contrast to the lengthy and elaborate physician-patient privilege in civil cases. *Compare* TEX.R.CIV.EVID. 509. The Rules of Criminal Evidence governing privileges apply "at all stages of all actions, cases, and proceedings," including "proceedings before grand juries." TEX.R.CRIM.EVID. 1101(b), (c)(2). When enacting the Rules of Criminal Evidence, the Court of Criminal Appeals designated for repeal certain statutes "as they relate to criminal cases and criminal law matters...." *See* "List of Repealed Statutes" following TEX.R.CRIM.EVID. 1101. One statute listed for repeal was article 4495b, § 5.08, the statute providing the doctor-patient privilege. *Id.* The legislature granted authority to the Court of Criminal Appeals to repeal this statute. Act of June 1985, 69th Leg., R.S., ch. 685, §§ 5–9, 1985 Tex.Gen.Laws 2472, 2473–74. The rules were adopted by the court on December 18, 1985, and became effective September 1, 1986.

The plurality opinion in *Comeaux* relied heavily, perhaps even exclusively, on article 4495b.[1] The court recognized "society's regard for this expectation, as evidenced by the Texas Medical Practice Act...." 818 S.W.2d at 53, and referred to the statute as a "social, or legislative fact, helpful in resolution of the constitutional question whether in the context proven, society recognizes the asserted expectation of privacy as a reasonable one." *Id.* at 52 n. 7. Now that article 4495b, section 5.08 has been repealed in criminal cases, rule 509 shows that society

---

1. The testimony of Comeaux's physician and the consent form seem to be no more than recogni- tion by doctors and hospitals of the requirements then imposed by article 4495b, section 5.08.

does not consider this expectation reasonable in criminal cases. We conclude that *Comeaux* does not control this case because no matter how reasonable appellant's subjective expectation of privacy may have been, it is one that society has rejected. The policy choice has been made by the Court of Criminal Appeals: Society can afford the physician-patient privilege in certain civil cases in order to protect personal privacy, but the need to protect the public from crime requires disclosure of the same information in criminal cases.

## THE USE OF THE GRAND JURY SUBPOENA IN THIS CASE

██ There was no abuse of the grand jury subpoena power in this case. This subpoena was not a fishing expedition, but was based on individualized suspicion. Appellant had driven his car through a red light at 2:30 a.m., at 60 to 90 miles an hour, had a one-car accident, and smelled of alcohol. Appellant does not contend the subpoena was too broad or that it included anything other than the record of the blood test. Moreover, the State could have obtained the same evidence in several ways. First a search warrant may issue for removal of blood from a defendant's body. *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966). Thus, it could have issued for the results of a blood test. The facts show the State had probable cause to obtain a search warrant for the blood test record. If the judge had quashed the grand jury subpoena, not because of privacy issues but out of concern for potential or real abuse of the grand jury process, the State could have replaced the evidence by getting a search warrant. TEX.CODE CRIM.P.ANN. art. 18.-02(10) (Vernon Supp.1993). Second, the State could have obtained the same evidence before or during trial by use of an ordinary subpoena duces tecum, rather than a grand jury subpoena. TEX.CODE CRIM.P.ANN. art. 24.02 (Vernon 1989). The search warrant procedure has the advantage of requiring both judicial authorization and a sworn showing of probable cause. The subpoena duces tecum at least requires that there be "a criminal action at a specified term of the court or on a specified day." TEX.CODE CRIM.

P.ANN. art. 24.01 (Vernon 1989). Minimal as they are, these procedures give more protection than the prosecutor's unbridled discretion. Finally, the State could have subpoenaed appellant's physician or the medical records custodian to testify about blood test results. TEX.R.CRIM.EVID. 509; *State v. Jenkins*, 80 Wis.2d 426, 259 N.W.2d 109, 113 (1977) (doctor's testimony under subpoena about blood test results was not a search or seizure). Because the State could have obtained it in these ways, we conclude that its disclosure was inevitable. *See Weaver v. State*, 721 S.W.2d 495, 496–98 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd) (error in admitting illegally seized blood sample was harmless because a second sample, legally acquired, also showed defendant was intoxicated). Reversing this case would not benefit appellant because the same evidence could be used against him at a new trial.

## CONCLUSION

We hold that appellant's expectation of privacy was not one that society considers reasonable. *See* Tex.R.Crim.Evid. 509; *Schmerber*, 384 U.S. at 770–72, 86 S.Ct. at 1835–36 (allowing warrantless forced withdrawal of blood as nontestimonial evidence of intoxication when time is of the essence, and allowing a search warrant for blood at other times); *Breithaupt v. Abram*, 352 U.S. 432, 436, 77 S.Ct. 408, 410, 1 L.Ed.2d 448 (1957) (taking judicial notice that a blood test is a "routine" and "minor" intrusion and observing that deaths on the highways "approach the astounding figures heard of only on the battlefield"); Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5 (Vernon Supp.1993) (deeming drivers to have consented to blood tests, penalizing refusal to be tested by license suspension and by allowing comment in court, and authorizing forced withdrawal of blood from defendants arrested for killing someone while driving while intoxicated). Courts in other states have reached the same conclusion. *People v. Perlos*, 436 Mich. 305, 462 N.W.2d 310, 315–21 (1990); *State v. Fears*, 659 S.W.2d 370, 375–76 (Tenn.1983); *State v. Dyal*, 97 N.J. 229, 478 A.2d 390, 394–96 (1984); *Pollard v. State*, 439 N.E.2d 177, 182–84 (Ind.App.1982); *Jenkins*, 259 N.W.2d at 111–13 (no expecta-

tion of privacy in absence of doctor-patient privilege); *compare State v. Copeland,* 680 S.W.2d 327, 329 (Mo.App.1984) (blood test suppressed because state law made results inadmissible, thus showing that Missouri recognized the expectation of privacy as legitimate).

We further hold that while the grand jury subpoena power was not abused here, the opportunity for abuse is great, and at least in cases where medical records are sought, the legislature should enact minimal safeguards to balance the right to privacy with the need to investigate crime freely. See concurring opinion.

Appellant's point of error is overruled.

The judgment is affirmed.

COHEN, Justice, concurring.

I take the unusual, but not unprecedented, step of concurring to my own opinion in order to add some further observations. *See Vargas v. State,* 838 S.W.2d 552, 557–58 (Tex. Crim.App.1992) (Benavides, J., concurring to his own majority opinion).

The unrestricted use of grand jury subpoenas to obtain medical records is a serious threat to privacy. There is almost no limit on what can be obtained without the knowledge or approval of any court, any grand jury, any supervisor in a prosecutor's office, or the person affected. A prosecutor's right to snoop is not limited by the seriousness of the crime—Texas grand juries may investigate any crime, including the most minor misdemeanors. Although DWI is not a minor offense, this case is a good example. This grand jury subpoena was issued for a misdemeanor offense. Although Texas law allows grand juries to investigate and indict for misdemeanors, that is rarely done. In Harris County, misdemeanor DWIs are almost never prosecuted by indictment. In this case, appellant was not indicted. Thus, it is unlikely that any grand jury requested this particular subpoena or saw these records. All of this is legal. The law allows any prosecutor, and there are hundreds in Harris County, to issue a grand jury subpoena. TEX.CODE CRIM.P.ANN. arts. 20.10, 20.11, 24.15 (Vernon 1989). This may be done for

any offense subject to indictment, including misdemeanors. TEX.CODE CRIM.P.ANN. art. 20.03, 20.09 (Vernon 1989); TEX. CONST. art. V, § 17; *see also* TEX.CODE CRIM.P.ANN. arts. 21.26, 21.27, 21.29, 21.30 (Vernon 1989) (authorizing transfer of indicted cases to lower courts, including justice courts); art. 25.04 (Vernon 1989) (authorizing service of indictment in misdemeanor cases); and art. 12.02 (Vernon 1989) (setting limitations period for indictment for misdemeanors).

Imagine the opportunities for political vendettas, personal revenge, and garden variety bureaucratic abuse of power. If a partisan prosecutor wanted to know if a presidential candidate of the opposite party had cancer, or was cured of it, he or she could subpoena hospital, laboratory, or physicians' records. If leaders of the executive branch of government wanted to see who leaked the Pentagon Papers, they would not have to burglarize the office of Daniel Ellsberg's psychiatrist—a friendly prosecutor could simply subpoena the records. If a partisan prosecutor wanted to know whether a political opponent had been treated for mental illness or for a venereal disease, he or she could subpoena the opponent's medical records. Under our law, there is no requirement that a grand jury even be in session. TEX.CODE CRIM.P.ANN. art. 20.12, 20.13 (Vernon 1989). There is no advance showing required that the material subpoenaed may be relevant to an existing or contemplated investigation, or even that there be an existing or contemplated criminal investigation. Judicial authority over the process is almost totally lacking. I know of no other part of the judicial process more open to abuse.

Narrowly drafted legislation should be enacted to put reasonable limits upon the use of grand jury subpoenas for things as intimate as medical records. Such an act might include the following limitations designed to balance the valued right of personal privacy with the State's need to freely investigate crime.

First, limit the number of prosecutors in the district attorney's office who could issue a grand jury subpoena for medical records to the elected district attorney only or to the elected district attorney and one designated

assistant. Precedent for this very limitation is found in TEX.CODE CRIM.P.ANN. art. 44.-01(d), (i) (Vernon Supp.1993), which allows only the elected district attorney to sign a State's notice of appeal and specifically prohibits the State from appealing if the notice is signed by any assistant. *State v. Muller,* 829 S.W.2d 805, 811–12 (Tex.Crim.App.1992).

A second limitation would limit grand jury subpoenas for medical records to instances where the prosecutor and the grand jury foreman have sworn that a grand jury investigation is in progress, or at least contemplated, and that the evidence sought is believed to be material to that investigation. These very procedures are already required to subpoena an out-of-county witness. TEX.CODE CRIM.P.ANN. art. 20.11 (Vernon 1989).

A third limitation would restrict grand jury subpoenas for medical records to investigations of certain designated serious offenses.

A fourth limitation would require some form of notice and right to be heard by a party whose medical records were sought. Exceptions should exist for extraordinary circumstances where speed or secrecy was found to be essential by a district judge after a non-public hearing on a prosecutor's application for subpoena. Such a provision might provide, for example, that the State must attempt to notify in writing the party whose records are sought at least 20 days before executing the subpoena. If the person notified moves to quash the subpoena, the district judge should quash it unless it meets the three requirements set out above, and, in addition, the judge determines that the public interest in seizing the evidence outweighs the person's right to privacy. The State could issue and execute the subpoena without notice if authorized to do so by a district judge upon a sworn and sealed showing of exigent circumstances requiring speed or secrecy. If only speed justifies the seizure without notice and there is no need for secrecy to be maintained after the seizure, the State should seal the subpoenaed materials immediately after seizing them, without viewing or copying them, and deposit them under seal in court custody for safe keeping while the person whose medical records were seized is notified and given an opportunity to challenge the subpoena. Very similar procedures have been required by unanimous vote of the Supreme Court of New Jersey. *State v. Dyal,* 97 N.J. 229, 478 A.2d 390, 396–97 (1984).

I respectfully make these recommendations to our legislators.

HEDGES and BASS, JJ., join in this opinion.