**Lisa Marie KNAPP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–083 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 24, 1996.

Decided March 19, 1997.

Frank Blazek, Smith, Martin, Henderson Morgan, DeLong & Blazek, Huntsville, for appellant.

Frank H. Bass, Jr., County Attorney, William L. Pattillo, Assistant County Attorney, Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Appellant was convicted by a jury for having committed the misdemeanor offense of

driving while intoxicated. The trial court assessed punishment at two years' confinement in the Montgomery County Jail, and a fine of $700. The trial court suspended the imposition of the jail sentence and placed appellant on probation for a period of two years. The record before us reflects the offense date to have been on or about August 10, 1992. The trial commenced on October 24, 1994. Appellant raises nine points of error for our consideration, none of which complain of the legal or factual sufficiency of the evidence to sustain the conviction.

▆ Points of error one and two read as follows:

Point of Error One: The trial court erred by allowing the use of medical records obtained by the use of Grand Jury subpoena in violation of appellant's right of privacy.

Point of Error Two: The trial court erred in allowing the use of medical records obtained in violation of the Medical Practices Act, Vernon's Ann. Civ. St. Art. 4495b.

An examination of the facts elicited at trial indicates that on the night of August 10, 1992, appellant was operating a motor vehicle on a public street in Montgomery County, Texas, when she collided with a tractor-trailer rig loaded with lumber products. Both appellant and a female passenger, Janell Hanson–Zirbel, were seriously injured. The driver of the 18–wheeler was not injured. At the scene of the accident, appellant exhibited a strong odor of alcohol on her breath and was initially very combative with medical personnel who were attempting to safely extricate appellant from her mangled vehicle. Hospital records indicated that appellant's blood alcohol content was determined to be .158 approximately two hours after the accident. The State's expert opined, albeit in response to a hypothetical question posed to him during direct examination, that the blood alcohol content could have been as high as .19 at the time of the accident. A Department of Public Safety trooper investigating the accident testified that he discovered an open bottle of beer inside appellant's vehicle. The trooper detected some beer still in the bottle. He also stated that neither he nor any other law enforcement personnel direct-

ed any medical personnel to take blood from appellant at any time. Over appellant's objections at trial, certain selected pages from her medical records were introduced into evidence. In addition to appellant's blood alcohol content, noted in State's Exhibit 10–A, State's Exhibit 10–B contained a notation that appellant may have had "8 beers"; State's Exhibit 10–C listed the time of the blood-work on appellant at "2305;" State's Exhibit 10–D contained the notation "27 y/o wf ... states fell asleep. Admits to 'a lot' of ETOH at [around] 2000;" and State's Exhibit 10–E also contained the notation that "Pt fell asleep."

As it was at the trial court level, appellant's contention on appeal is that her privacy rights under the Texas Constitution were violated by the State when it used a grand jury subpoena to obtain the medical records from Hermann Hospital in Houston. Appellant further complains of a violation of TEX. REV.CIV. STAT. ANN. art. 4495b, sec. 5.08(g)(10) (Vernon Pamph.1997), which states that medical records are not discoverable in a criminal case, where the patient is a defendant, until the trial court makes an in camera determination of the relevancy of the records. At trial, appellant's trial counsel expressed to the trial court his belief that his position on this issue would be ultimately vindicated as the Court of Criminal Appeals had granted petition on *McBride v. State*, No. 01–92–00574–CR (Tex.App.—Houston [1st Dist.] September 23, 1993)(not designated for publication), 1993 WL 368897, *pet. dism'd, improvidently granted*, 920 S.W.2d 318 (Tex.Crim.App.1996). Mirroring the defendant's arguments and authorities in *McBride*, appellant also relies on *State v. Comeaux*, 818 S.W.2d 46 (Tex.Crim.App. 1991). In *Comeaux*, the Court of Criminal Appeals held that the defendant had a legitimate expectation of privacy in the blood sample he gave to the hospital and recognized "society's regard for this expectation, as evidenced by the Texas Medical Practice Act [art. 4495b]. . . ." *Comeaux*, 818 S.W.2d at 53. In *Comeaux*, the hospital doctor ordered a blood sample but did not order a blood alcohol test. The police, who suspected Comeaux of DWI, asked the nurse to give them

a sample of his blood, but the nurse refused. The police then produced a document falsely stating that Comeaux was required to give a blood sample and ordered her to comply. The nurse provided the sample, the State conducted the test and then charged Comeaux with DWI. The Court of Criminal Appeals in *Comeaux* found the warrantless search and seizure of Comeaux's blood violated his constitutional protection against unreasonable searches and seizures. *Id.*

The Court of Appeals in *McBride*, relying on its decision in *Thurman v. State*, 861 S.W.2d 96 (Tex.App.—Houston [1st Dist.] 1993, no pet.), noted that the section of the Medical Practice Act dealing with the confidentiality of patient's medical records (and upon which the plurality in *Comeaux* heavily relied) was repealed, being replaced by a rule of evidence, authored by the Court of Criminal Appeals, that totally eliminated the physician-patient privilege in criminal cases. *See* TEX.R.CRIM. EVID. 509. The Houston Court in *McBride* then quoted the following from *Thurman:*

> Now that article 4495b, section 5.08 has been repealed in criminal cases, rule 509 shows that society does not consider this expectation reasonable in criminal cases. We conclude that *Comeaux* does not control this case because no matter how reasonable appellant's subjective expectation of privacy may have been, it is one that society has rejected. The policy choice has been made by the Court of Criminal Appeals: Society can afford the physician-patient privilege in certain civil cases in order to protect personal privacy, but the need to protect the public from crime requires disclosure of the same information in criminal cases.

*Thurman*, 861 S.W.2d at 99–100.

Unfortunately for appellant, on April 24, 1996, the Court of Criminal Appeals determined that it had improvidently granted the petition for discretionary review in *McBride* and dismissed said petition. *McBride v. State*, 920 S.W.2d 318, 319 (Tex.Crim.App. 1996). Therefore, the holdings and rationales announced in *Thurman* are still viable and remain good law. Said holdings have been subsequently reaffirmed by Courts of Appeals in Corpus Christi and Austin. *See Clark v. State*, 933 S.W.2d 332 (Tex.App.—Corpus Christi 1996, no pet.); and *Corpus v. State*, 931 S.W.2d 30 (Tex.App.—Austin 1996, pet. filed).

With regard to appellant's complaint of obtaining the records by grand jury subpoena, the *Clark* case held that there was no seizure involved in that the blood sample in question was drawn and tested for medical purposes at the request of the attending physician, and thereafter the State merely obtained the test results pursuant to the grand jury subpoena. *Clark*, 933 S.W.2d at 333. As the physician-patient privilege in criminal cases had been repealed, the blood test results were no longer protected. *Id.* We adopt the holdings and rationales set out in *Clark, Corpus,* and *Thurman* as the issues raised are identical to appellant's first two points of error. As such, we overrule points of error one and two.

■ Point of error three complains of trial court error in the admissibility of appellant's blood test results as appellant's blood "was taken tortiously from appellant without her consent." Other than a civil case that states the general proposition that a surgeon is subject to liability for assault and battery where he operates without the consent of the patient, appellant's lone authority under this point of error is, again, *State v. Comeaux, supra,* as it recognizes a patient's expectation of privacy in a blood sample. As we held in our discussion of appellant's first two points of error, *Comeaux* can be distinguished on its facts and on the law relied on. Furthermore, appellant provides absolutely no authority for the contention raised in her written motion to suppress that the commission of a tort by the medical personnel in taking the blood sample would render any results inadmissible under TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1997). As such, this specific complaint has been improperly briefed and will not be addressed on appeal. TEX.R.APP. P. 74(f); *Penry v. State*, 903 S.W.2d 715, 760 (Tex.Crim.App.); *cert. denied,* —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995). Point of error three is overruled.

In her fourth point of error, appellant alleges trial court error in permitting the admission of State's Exhibits 10–B, 10–C, 10–D, and 10–E in that they were hearsay and violated appellant's right of confrontation and cross-examination.[1] The key to this point of error appears to be appellant's contention that the State "made no offer of any exception to the general hearsay rule that would make these exhibits admissible." As we view the record, appellant's contention is incorrect. When the State tendered appellant's medical records for admission into evidence, a discussion occurred between the parties and the trial court. At one point the attorney for the State remarked, "These records have been admitted into evidence by a self-proving affidavit as to medical records of Lisa Marie Knapp and clearly are her medical records, Your Honor." Counsel for appellant did not take issue with the existence of a self-proving affidavit as mentioned by the State. Indeed, moments later, in response to the State's tender of the medical records in question, trial counsel for appellant asked, "Is that the proffer? Are you relying on the self-authenticated records?" The attorney for the State responded, "Yes. Yes."

Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM. EVID. 801(d). Although Texas Rule of Criminal Evidence 802 makes hearsay evidence inadmissible at trial, Rule 803 outlines a number of exceptions to Rule 802. Rule 803(6), commonly known as the "business records exception," allows the admission of certain memoranda, reports, records, or data compilations that are (1) made at or near the time of the events they record, by or from information transmitted by a person with knowledge of the events; and (2) made and kept in the course of a regularly conducted business activity. TEX.R.CRIM. EVID. 803(6). The necessary predicate for introduction of a business record may be shown by offering either (1) the testimony of a records custodian or other qualified witness, or (2) an affidavit that complies with Rule 902(10). *See* TEX.R.CRIM. EVID. 803(6) & 902(10).

In the instant case, both parties acknowledged the existence of the self-authenticating affidavit in connection with appellant's medical records. While said affidavit does not appear in the record before us, we may accept its existence as a fact since there is no challenge made to it by appellant in either the record or in her brief. *See* TEX.R.APP. P. 74(f). Therefore, under the "business records exception" of Rule 803(6), appellant's medical records were not hearsay and were properly admitted by the trial court. Point of error four is overruled.

Appellant's fifth point of error complains that the trial court erred in refusing a requested instruction be included in the written instructions to the jury limiting the jury's consideration of testimony of appellant's prior drinking habits. The record before us reflects that appellant was permitted by the trial court to elicit from several defense witnesses in her case-in-chief that appellant was a law-abiding citizen. One such defense witness was Bruce Peterson, appellant's boyfriend. Direct examination of Peterson elicited the fact that on the night of the accident he received a telephone call from appellant at about 8:30 or 8:35 p.m. The conversation lasted about a minute to a minute and a half,

1. With regard to her confrontation cross-examination complaint, appellant makes a cursory citation to the Texas Constitution and to art. 1.05 of the Texas Code of Criminal Procedure. She does not argue how either citation is applicable to the particular facts of her case. We note that this particular area of the law has been heavily litigated over the recent years with a generally recognized test for confrontation clause violations having emerged in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Significant Court of Criminal Appeals cases addressing the issue include *Holland v. State*, 802 S.W.2d 696 (Tex.Crim.App.1991), and *Long v. State*, 742 S.W.2d 302 (Tex.Crim.App.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), *overruled on other grounds*, *Briggs v. State*, 789 S.W.2d 918 (Tex.Crim.App.1990); *Coulter v. State*, 494 S.W.2d 876 (Tex.Crim.App. 1973). Appellant woefully fails to recognize or apply the mountain of case law on this issue. She merely provides conclusory assertions. As we are not required to brief an appellant's issues for her, we overrule this portion of point of error four as having been inadequately briefed. *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex.Crim. App.1995).

and Peterson stated that appellant's voice sounded "normal" and not impaired, and that he (Peterson) could determine as to whether or not someone is impaired by how they sound over the telephone.

On cross-examination by the State, Peterson stated he had been dating appellant for about three years. The questioning then turned to appellant's law-abiding nature and continued as follows:

Q.[The State] Okay. So as far as you know she is in your opinion a law-abiding person no matter what happens here today. It doesn't matter to you.

A.[Peterson] Yes. I mean, I don't know how accurate a blood test is or anything like that. But I know she wasn't intoxicated that night. I don't know what point one or one point whatever you are telling me. She was not intoxicated that night.

Q. Do you have any reason to dispute the blood test?

A. I never—Well, no, but I never seen her intoxicated in the three years I have known her.

Q. Okay. Now let's talk about that. You say she was not intoxicated. Right?

A. She didn't seem to me. No. No way.

Q. And you have never seen her intoxicated before?

A. Uh-uh.

Q. I could ask you the question how would you know in that case, but let me shift the focus to this.

A. I wouldn't have, you know, because I have never seen her that way.

Q. You wouldn't know if she was intoxicated because you have never seen her that way?

A. I have seen a lot of intoxicated people, but she wasn't.

Q. You can't tell if she has got specific symptoms or if she has like a high tolerance for alcohol. You don't know any of that because you don't recall ever seeing her intoxicated. True?

A. No, I don't recall ever seeing her intoxicated at all.

Q. Even if they were intoxicated you never reached that conclusion about her. Correct?

A. I never seen her. No.

Q. How often does Lisa drink alcohol?

[Trial Counsel]: Your Honor, I am going to object to that. They are trying to go in and go into her character for drinking. That is not relevant. That is prejudicial and I object to it. Prejudicial value exceeds the probative value.

THE COURT: I am going to overrule that objection.

Q. Mr. Peterson, how often does Lisa drink alcohol?

A. Not too often. I mean maybe on a weekend or something.

Q. What does she usually drink when she drinks?

A. Just beer with me.

Q. What kind of beer does she usually drink?

A. Bud Light.

[Trial Counsel]: May I have a running objection to this?

THE COURT: Yes, you may.

Q. How much does she usually drink at a time?

A. I wouldn't really know. About maybe two or three or four. Just depending on when we get there, you know, or what the occasion is.

Q. On some occasions she will drink more than that?

A. I couldn't say one way or the other. I mean maybe she might have five or something. You know, I don't know. I don't sit there and count her beers.

\* \* \* \* \* \* \* \* \* \* \*

Q. So, if she drinks a margarita that would be unusual for her?

A. Well, what do you mean by unusual? Like if we go out to have a Mexican dinner or something like that and she drinks a margarita. Is that unusual?

Q. You said she has done it one (sic) or twice before in the three years you have known her.

A. That is what I am saying. Something like we go out and eat a Mexican dinner I have seen her drink a margarita.

Q. One margarita would be—

A. She wouldn't finish it once we got dinner or something.

Q. Two margaritas would be even more unusual?

A. Yes.

Q. Yeah. I mean, that would be unusual for her. That is the kind of alcohol that she wouldn't usually be used to handling. Right?

A. Right.

■ No limiting instruction is required when an extraneous offense[2] is offered to directly prove one of the main issues in the indicted case. *Puente v. State,* 888 S.W.2d 521, 528 (Tex.App.—San Antonio 1994, no pet.); *Payton v. State,* 830 S.W.2d 722, 730 (Tex.App.—Houston [14th Dist.] 1992, no pet.). In the instant case, Peterson's testimony indicated that he was a fact witness to the issue of appellant's intoxication on the night in question. He further testified that he had *never* seen appellant intoxicated in the three years they had dated. The State was permitted to fully cross-examine Peterson as to the extent of his knowledge of appellant's drinking habits that may have formed the basis for the opinions he had as to the state of appellant's intoxication on certain occasions, especially on the night in question. It was clearly relevant as to whether appellant was or was not intoxicated shortly before the accident (*see* Tex.R.Crim. Evid. 401), and its probative value was not substantially outweighed by its prejudicial effect. *See* Tex.R.Crim. Evid. 403.

■ Furthermore, appellant cannot prevail on this issue as she appears to ignore the fact that a party opposing evidence has the burden of objecting and requesting the limiting instruction at the introduction of the evidence. Tex.R.Crim. Evid. 105; Tex.R.App. P. 52(a); *Garcia v. State,* 887 S.W.2d 862, 878 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). Once evidence is received without a proper limiting instruction, it becomes part of the general evidence in the case and may be used as proof to the full extent of its rational persuasive power. *Id.* Once admitted, the fact that evidence might have been inadmissible for certain purposes if the proper objection had been made does not limit its use. *Garcia,* 887 S.W.2d at 878–879. As such, the trial court did not err in denying appellant's requested limiting instruction raised for the first time during the discussion of the written jury instructions following the close of all of the evidence. Point of error five is overruled.

■ Point of error six alleges error by the trial court in failing to provide a proper application paragraph to the jury. The application paragraph contained the following language:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th day of August, 1992, in Montgomery County, Texas, the defendant, Lisa Marie Knapp, was then and there intoxicated, by reason of the introduction of alcohol into her body, and while so intoxicated, did drive or operate a motor vehicle in a public place, then you will find the defendant guilty as charged.

Appellant contends that the above instruction may have misguided the jury in that the phrase "was then and there intoxicated, by reason of the introduction of alcohol into her body" may have led a juror to improperly believe that the consumption of any alcohol was sufficient to find intoxication. The jury instructions did contain the correct statutory definition of "intoxication" two paragraphs above the application paragraph. General instructions and definitional instructions

---

2. We recognize that *Bishop v. State,* 869 S.W.2d 342, 345 (Tex.Crim.App.1993) held, *et al.,* that Tex.R.Crim. Evid. 404(b) is not limited to criminal offenses or even misconduct, but intent of said rule *is* to prevent introduction of evidence to prove character of person in order to show that he acted in conformity with that character, and prohibition applies as equally to evidence of ex-

traneous acts or transactions as it does to evidence of extraneous offenses. Therefore, evidence of appellant's drinking habits would fall under Rule 404(b) if said evidence was intended *only* to prove her character in order to show she acted in conformity with that character on the evening in question.

need not be applied to the facts of a case. *Clark v. State*, 929 S.W.2d 5, 10 (Tex.Crim. App.1996), *petition denied*, —— U.S. ——, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1996). Indeed, the abstract or definitional paragraphs have been held to serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraph of the charge. *Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App.1996); *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim. App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995) (omission of culpable mental state from the application paragraph was sufficiently supplied by a definition of the offense given in the abstract portion of charge). In the instant case, appellant does not provide any specific authority holding the language in question to be improper. All statutory terms relating to the offense charged were defined for the jury. The application paragraph properly applied the law to the facts. Point of error six is overruled.

 Point of error seven complains of trial court error in denying appellant's motions for mistrial during final argument by the State. Appellant directs our attention to four incidents during the State's closing argument at the guilt/innocence phase of the trial where appellant alleges the State commented on appellant's failure to testify. The record reflects that in each instance the trial court sustained appellant's objection, and instructed the jury to disregard the last remark by the State. However, each of appellant's requests for a mistrial were denied.

 Reversible error will result from improper prosecutorial argument only if the argument is extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision, and is so inflammatory that its prejudicial effect cannot reasonably be cured by a judicial instruction to disregard. *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App. 1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). The Court of Criminal Appeals has held that only offensive or flagrant error calls for reversal when there has been an instruction to disregard. *Cooks v. State*, 844 S.W.2d 697, 728 (Tex.

Crim.App.1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). The argument must be examined in light of the entire record. *Hernandez*, 819 S.W.2d at 820; *Jones v. State*, 863 S.W.2d 254, 257 (Tex.App.—Beaumont 1993, pet. ref'd).

Appellant's lone authority on this issue is *Norton v. State*, 851 S.W.2d 341 (Tex.App.— Dallas 1993, pet. ref'd), an aggravated sexual assault case. The Dallas Court of Appeals reversed the defendant's conviction because it found the prosecutor's statement, "There were only two people out there and we heard from one of them," was a direct comment on the defendant's failure to testify and was so inflammatory that the trial court's instruction to disregard did not cure the error. *Id.* at 346. The apparent basis for this conclusion was the fact that the record indicated the defendant and the complainant were the only two parties present during the time of the alleged offense, and that the defendant's theory of the case was that the complainant consented to the acts alleged in the indictment.

In the instant case, however, we have several sources providing evidence of appellant's intoxicated state on the night in question. In fact, the only element of the offense that was seriously contested by appellant was whether or not she was operating her vehicle while in an intoxicated condition. The presence of eyewitness and medical evidence indicating appellant was indeed intoxicated would certainly lessen the impact of any alleged reference to appellant's failure to testify made by the State. In short, the record before us presents much more than the virtual "swearing match" which was before the Dallas Court in *Norton*. In the instant case, we cannot say that the four statements in question were so offensive and flagrant, in light of the entire record before us, that the trial court's instruction could not have cured whatever error may have occurred. Point of error seven is overruled.

 Point of error eight reads, "The trial court erred in entering a judgment of conviction for Driving While Intoxicated, 'Open Container,' when such allegation was not properly plead." The record reflects that

the complaint and information initially filed against appellant did not contain any "open container" allegation. The information was amended in April of 1994, and again in June of 1994, with each amendment including an "open container" allegation. Appellant moved to quash said information prior to trial, with said motions being denied by the trial court. Appellant's contention on appeal, citing to *Ward v. State,* 829 S.W.2d 787 (Tex. Crim.App.1992), is that the amended information were invalid because "amendments can only be accomplished by physically inter-lineating the changes on the original charging instrument." We feel that appellant's interpretation of *Ward* is much too strained. We find the basic holding in *Ward* to be contained in this portion of the Court's opinion:

> Certainly, the motion to amend and the trial judge's order granting it serve as notice to the accused of what changes will be made to the pleadings. However, that is not notice of the *charge* against him. Thus, concluding that "amendment" means an actual alteration to the document charging an offense ensures the accused of his constitutional right to be informed, from the face of the charging instrument, of the nature and cause of the accusation against him.

*Ward,* 829 S.W.2d at 794.

■ It would appear that the main concern of the Court in *Ward* was that an accused have *notice* of the charges against him, and that he need go no further than the "face of the charging instrument" itself to be informed of said charges. The actual alteration of the charging instrument may be accomplished by handwriting, typing, interlining, striking out, etc. *Id.* at 793, n. 14. The Court in *Ward* also discussed the statutory prerequisites for amending a pleading as set out in TEX.CODE CRIM. PROC. ANN. art. 28.10 & 28.11 (Vernon 1989). These include notice to the accused and permission from the trial court. The State's compliance with these prerequisites is not before us in the instant appeal.[3] The appellant's complaint is strictly

with the manner in which the State physically altered the charging instrument. The fact that the amended charging instruments were typed with the "open container" allegation added placed said additional allegation in the charging instrument itself. Appellant did not have to rely on other documents or motions by the State to have notice of the complete charges against her. The mandate of *Ward* was satisfied. Point of error eight is overruled.

■ Appellant's final point of error complains of the trial court's judgment containing the language "open container ... as found by the Jury" on the grounds that the jury was neither instructed on such issue nor made such a finding. Appellant claims that because the jury instructions made no mention of the "open container" allegations and the jury verdict also made no mention of it, the judgment is unsupported by the pleadings. Appellant provides us with no authority for this contention which, if correct, could possibly render the judgment at least voidable if not void. Ironically, the one case appellant does cite fully discusses the issue and holds unfavorably to appellant's position. *See McDonald v. State,* 863 S.W.2d 541, 545 (Tex.App.—Houston [1st Dist.] 1993, no pet.). The *McDonald* Court held that litigation of the "open container" issue is properly reserved for the punishment phase of the trial because an "open container" allegation is an enhancement provision, not an essential element of the offense of driving while intoxicated. *Id.*

Furthermore, the *McDonald* Court also held that since the defendant chose not to have the jury assess punishment, mirroring appellant's choice in the instant case, it was within the province of the trial court, as trier of fact at the punishment phase, to determine the truth of the allegations in any enhancement paragraphs. *Id.* We, therefore, find no error contained in the language of the judgment. Point of error nine is overruled. The

---

3. Although raised in paragraph 6 of her "Second Motion To Quash Complaint And Information," this issue appears to have been abandoned on appeal as her brief makes no mention of the State failing to obtain leave from the trial court.

judgment and the sentence of the trial court are affirmed.

AFFIRMED.