NO. 07-00-0465-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 10, 2001

_____

JOHN B. LEWIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-432853; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before QUINN and REAVIS and JOHNSON, JJ.

Following his plea of not guilty, appellant John B. Lewis was convicted by a jury of possession of methamphetamine, enhanced by three prior felony convictions, and punishment was assessed by the trial court at 35 years confinement. Presenting nine points of error, appellant challenges his conviction. By points of error one and two, he contends the evidence is legally and factually insufficient to support his conviction. By

points three and four, he contends the trial court erred in overruling his objection to the admission of his medical records on federal and state constitutional grounds, and by point five, he contends the court's ruling regarding his medical records was erroneous because the chain of custody of samples tested was not proven. Appellant's sixth and seventh contentions are that the trial court erred in overruling his motion to suppress the results of a urinalysis taken without his consent in violation of the United States and Texas Constitutions. By his eighth point, he contends the trial court erred in sustaining the State's objection to the testimony of Joey Pierce because the testimony was subject to a hearsay exception. Appellant's ninth and final complaint is that the trial court erred in overruling his objection to the charge because the evidence raised the issue of whether appellant knew he possessed contraband. Based on the rationale expressed herein, we affirm the conviction, but reform the judgment.[1]

On the evening of December 3, 1999, Officer Billy Joe Green of the Lubbock Police Department responded to a report of a one-car accident. When he arrived at the scene, he observed appellant outside the vehicle in a disoriented state. Appellant identified himself to Green as Albert Aikman and stated that he was the driver of the vehicle. Green noticed blood on the back of appellant's shirt and appellant was transported to the hospital

---

[1]Appellant was convicted of possession of more than one, but less than four grams of methamphetamine, a third degree felony, enhanced by three prior felony convictions. Tex. Health & Safety Code Ann. § 481.115(c) (Vernon Supp. 2001). The judgment however, reflects that appellant was convicted of a second degree felony with no enhancements.

for treatment. Green remained at the scene and found appellant's driver's license and discovered that he had misrepresented his identity. When the officer reported appellant's true name to his dispatcher he discovered that a blue warrant had been issued for appellant. Green proceeded to the hospital while Officer Scott completed the investigation. Scott discovered that the vehicle appellant was driving was registered to Raymond Campbell.

When Green entered the hospital emergency room, he observed appellant carrying a black leather jacket and attempting to leave. Green, however, admitted at trial that he could not recall whether appellant was wearing a jacket at the time of the accident. Green called out to appellant using his true name and appellant responded. He was arrested and a nurse assisted Green in placing him on a gurney. Appellant was handcuffed to the gurney. The black jacket was on the gurney, although Green testified he did not know how it got there.

Green observed appellant receiving medical attention. Appellant was asked by medical personnel to give a urine sample without any direction, encouragement, or aid from Green. When appellant stated that he could not give a sample the nurse began gathering equipment to start a catheter. At that point appellant agreed to voluntarily provide a sample, but was unable to produce any urine. A catheter was used to obtain a sample and although appellant physically resisted, he did not verbally object to his urine being taken by catheter. Officers Green and Scott became concerned for the safety of

medical personnel and restrained appellant on the gurney so that medical treatment could be completed. At trial appellant's medical records were admitted over objection establishing the presence of amphetamines and marijuana at the time he was treated.

After Officer Green left the hospital and went to the police department to prepare his report, he was relieved by Officer Day. While at the emergency room, Day discovered a Norelco-type razor bag in the black jacket. Among other items, it contained three clear plastic bags with what he believed to be methamphetamine and a single-edged razor blade. After appellant was discharged from the emergency room, Scott transported him to the police department and delivered the razor bag and its contents to Green. During booking procedures, appellant observed Green examining the razor bag and without prompting or questioning, appellant volunteered that the bag was not his and that he had picked it up at the scene of the accident. Appellant signed an intake property record form which, among other items of personal effects, listed that he had one coat, one Norelco bag, and an electric cord. After conducting tests, Green secured the contraband and checked it into the property room. Later, the contraband was removed from the property room and delivered to the DPS crime lab for testing, where it was determined that the contraband was 3.31 grams of methamphetamine. In addition to the contraband, over $700 was found on appellant's person.

By his first two points, appellant contends the evidence is legally and factually insufficient. We disagree. When both the legal and factual sufficiency of the evidence are

challenged, we must first determine whether the evidence is legally sufficient to support the verdict.  Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996).  It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense.  U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2001); Tex. Pen. Code Ann. § 2.01 (Vernon 1994).  In conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991), *overruled on other grounds*, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000).  As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence.  Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

After conducting a legal sufficiency review under *Jackson*, we may proceed with a factual sufficiency review. *Clewis*, 922 S.W.2d at 133.  The Court of Criminal Appeals has directed us to ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  Johnson v. State, 23 S.W.3d 1, 11

5

(Tex.Cr.App. 2000) (adopting complete civil factual sufficiency formulation); *see also* King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). Accordingly, we will reverse the fact finder's determination only if a manifest injustice has occurred. *Johnson*, 23 S.W.3d at 12. In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must avoid substituting our judgment for that of the fact finder. *See* Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997).

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. In order to establish unlawful possession of a controlled substance, the State was required to prove that appellant exercised actual care, custody, control, or management of the contraband and that he knew the substance he possessed was contraband. *See* Tex. Pen. Code Ann. § 481.002(38) (Vernon Supp. 2001); *see also* King v. State, 895 S.W.2d 701, 703 (Tex.Cr.App. 1995); Martin v. State, 753 S.W.2d 384, 387 (Tex.Cr.App. 1988). These elements may be established by circumstantial evidence. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex.Cr.App. 1985). When the accused is not in exclusive possession of the contraband, knowledge and control may be established by independent facts and circumstances affirmatively linking the accused to the contraband. Brown v. State, 911 S.W.2d 744, 747 (Tex.Cr.App. 1995); Pollan v. State, 612 S.W.2d 594, 596 (Tex.Cr.App. 1981). "Affirmative links" is a shorthand expression of what must be proven to establish that the accused possessed some kind of contraband knowingly or intentionally and is

6

used to evaluate the sufficiency of the evidence. *Brown*, 911 S.W.2d at 747.[2] Additionally, it is the logical force of the factors individually or combined that determines whether the State's evidence links the accused to the contraband. Trejo v. State, 766 S.W.2d 381, 385 (Tex.App.–Austin 1989, no pet.).

In order to affirmatively link an accused to possession of contraband the evidence must establish that his connection with the contraband was more than just fortuitous. *Brown*, 911 S.W.2d at 747. Presentation of false identification to an officer indicates a "consciousness of guilt" and an awareness that an accused may need to conceal his true identity from law enforcement officials. Felder v. State, 848 S.W.2d 85, 98 (Tex.Cr.App. 1992). Evidence of flight may be considered as a circumstance from which an inference of guilt may be drawn. Foster v. State, 779 S.W.2d 845, 859 (Tex.Cr.App. 1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990). Whether an accused is under the influence of contraband is an affirmative link tending to establish knowing possession. Harris v. State, 994 S.W.2d 927, 933 (Tex.App.–Waco 1999, pet. ref'd). A

---

[2]Factors that have been considered affirmative links include: 1) the defendant's presence when a search warrant was executed; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the accessibility of the narcotic; 4) whether the defendant was under the influence of narcotics when arrested; 5) whether the defendant possessed other contraband when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of the contraband; 10) whether other contraband or drug paraphernalia was present; 11) whether defendant owned or had the right to possess the place where the drugs were found; and 12) whether the place the drugs were found was enclosed. Green v. State, 892 S.W.2d 220, 222 (Tex.App.–Texarkana 1995, pet. ref'd).

7

large amount of cash has also been considered as a factor in affirmatively linking an accused to contraband. Brown v. State, 878 S.W.2d 695, 700 (Tex.App.–Fort Worth 1994), *aff'd*, 911 S.W.2d 744 (Tex.Cr.App. 1995).

The evidence established the following affirmative links proving appellant knowingly possessed the methamphetamine:

- appellant provided false identification to Officer Green immediately after the accident;

- upon arriving at the emergency room, Officer Green believed appellant was attempting to leave;

- the results of the urinalysis showed appellant had amphetamines and marijuana in his system;

- appellant did not deny ownership of the jacket when Officer Day placed it on his shoulders after he was handcuffed for transportation from the hospital to the police department;

- appellant had over $700 cash on his person; and

- appellant signed the intake property form acknowledging that he was in possession of one "coat" when he was booked.

Although the evidence is circumstantial, after viewing it in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Concluding that the evidence is legally sufficient to support the verdict, we must now determine whether the evidence is factually sufficient. After a neutral review of all the evidence, we do not find that it demonstrates that the proof of guilt is so obviously weak

8

as to undermine confidence in the jury's decision. Based on the logical force of the factors discussed above, and without substituting our own judgment, we conclude that the evidence is factually sufficient to affirmatively link appellant to knowingly possessing methamphetamine. Appellant's first and second points are overruled.

By his third and fourth points, appellant contends the trial court erred by overruling his objection to the introduction of medical records because their introduction was hearsay in violation of his State and Federal Constitutional rights. We disagree. Medical records are admissible under the "business records exception" to the hearsay rule if the proper predicate has been laid. Tex. R. Evid. 803(6); Knapp v. State, 942 S.W.2d 176, 180 (Tex.App.–Beaumont 1997, pet. ref'd). The predicate necessary for introduction of a business record may be shown by the testimony of the records custodian. *Id.* The State laid this predicate by calling Beverly Houk, the records custodian at the hospital where appellant was treated. Therefore, appellant's third and fourth points are overruled.

Appellant contends by his fifth point of error that the necessary chain of custody was not proved and thus the urinalysis results should have been inadmissible. We disagree. Appellant relies on Lynch v. State, 687 S.W.2d 76 (Tex.App.–Amarillo 1985, pet. ref'd), for the proposition that if the proper chain of custody is not proven, the evidence is inadmissible. We agree with appellant's interpretation of this case; however, it is inapplicable in this situation. The State admitted various hospital records that matched the identity of appellant to the urinalysis. Additionally, Officer Green testified that he observed

9

the nurse at the hospital take the urine sample. Unlike the situation in *Lynch*, the evidence presented in the underlying case satisfies the necessary chain of custody requirement because the evidence establishes the commencement and conclusion of the necessary chain of custody. Stoker v. State, 788 S.W.2d 1, 10 (Tex.Cr.App. 1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Any discrepancy goes to weight of the evidence and not its admissibility. *Id.* Appellant's fifth point is overruled.

By points six and seven, appellant contends the urinalysis was taken without his consent and thus, constituted a search not subject to any exception to the warrant requirement, in violation of the State and Federal Constitutions. We disagree. When an accused contends that evidence has been seized from him in violation of his constitutional rights, he bears the initial burden of proving that the government or a private party acting at the behest of the government has seized the evidence in question without a warrant. Russell v. State, 717 S.W.2d 7, 9 (Tex.Cr.App. 1986). In St. Clair v. State, 26 S.W.3d 89, 101-02 (Tex.App.–Waco 2000, pet. ref'd), the defendant claimed that hospital personnel obtained a blood sample from him in violation of his constitutional rights and that the results of the blood test should have been excluded from evidence. The court concluded from the record that the accused had failed to satisfy his burden of showing that hospital personnel were acting as instruments or agents of law enforcement when his blood was drawn and tested, and thus, his constitutional rights had not been implicated. Appellant does not refer this Court to any evidence and we have found none indicating that his urine

10

sample was taken and tested at the direction of law enforcement officers or that the nurse who took the specimen was acting at the behest of the government. Therefore, appellant's constitutional rights were not infringed.

Appellant relies on Ferguson v. City of Charleston, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), to support his contention. However, *Ferguson* is factually distinguishable from the situation because the urine samples in *Ferguson* were taken in anticipation that the results would be turned over to law enforcement officials. Appellant's urine was taken for medical treatment and not at the request of law enforcement. In fact, there is no evidence that appellant was suspected of drug use until after the sample was taken. Therefore, appellant's sixth and seventh points are overruled.

By his eighth point of error, appellant contends the trial court erred in sustaining the State's objection to the testimony of Joey Pierce because the testimony was an exception to the hearsay rule. We disagree. The admissibility of hearsay testimony is a question for the trial court to resolve and is reviewable under an abuse of discretion standard. Coffin v. State, 885 S.W.2d 140, 149 (Tex.Cr.App. 1994). A trial court's ruling will be upheld if it is within the zone of reasonable disagreement. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex.Cr.App. 2001), *cert denied*, __U.S.__, No. 00-10389, 2001 WL 649861 (Oct. 1, 2001). This Court's role is limited to determining whether the record supports the trial court's ruling. *Coffin*, 885 S.W.2d at 149.

Appellant met Pierce while in jail and by Pierce's testimony, appellant sought to establish that the jacket containing the contraband belonged to someone else. Out of the jury's presence, Pierce testified that the jacket belonged to Michael Hinkle and that Hinkle had been accusing people of stealing his jacket that contained his "dope." Based on Rule 803(24) of the Texas Rules of Evidence, the State objected to Pierce's testimony because there was no independent corroboration. The trial court sustained the objection as to any statements made by Hinkle, but ruled that Pierce could testify regarding identification of the jacket. Following the trial court's ruling, however, Pierce did not testify before the jury and the defense rested. No corroborating evidence was offered by the defense. Thus, based on this record, we conclude that the trial court did not abuse its discretion in sustaining the State's objection. Appellant's eighth point is overruled.

By his ninth and final point, appellant contends the trial court's jury charge was inadequate in defining possession. The court's charge included paragraphs defining the terms "possession," "intent," and "knowledge." However, appellant contends that the charge should have contained a clause on the defense of lack of knowledge as follows:

> If you find from the evidence, or if you have a reasonable doubt thereof, that Defendant did not know that the alleged controlled substance, if any, was in his coat at the time of its seizure by the officer, if they were, and that same was not the property of Defendant, you will acquit the defendant.

12

Appellant's request negates the knowledge element of the offense without negating the entire offense. However, lack of knowledge is not a statutory defense or justification for criminal responsibility. *See, e.g.* Tex. Pen. Code Ann. §§ 8.01 - 9.63. The Court of Criminal Appeals has held that a specific instruction negating an element is an unwarranted comment on the weight of the evidence. *See* Geisberg v. State, 984 S.W.2d 245, 249-50 (Tex.Cr.App. 1998), *cert. denied*, 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999). Moreover, because the Legislature has not recognized lack of knowledge as a defense, the trial court did not err in refusing the requested instruction. Appellant's ninth point is overruled.

Appellant was convicted of possession of methamphetamine, a third degree felony. *See* Tex. Health & Safety Code Ann. § 481.102(6) (Vernon Supp. 2001). A third degree felony is punishable by confinement for two to ten years. Tex. Pen. Code Ann. § 12.34(a) (Vernon 1994). However, appellant's conviction was enhanced by three prior felony convictions, to wit: (1) on January 12, 1995, appellant was convicted for burglary of a motor vehicle in cause number 36,417 in the 59th District Court of Grayson County; (2) on October 14, 1988, appellant was convicted of theft in cause number 86-404,100 in the 72nd District Court of Lubbock County; and (3) on April 1, 1986, appellant was convicted of possession of amphetamine in cause number 4,363 in the District Court of Baylor County. Pursuant to section 12.42(d) of the Texas Penal Code Annotated (Vernon Supp. 2001), appellant was sentenced to 35 years confinement as a habitual felony offender.

13

The judgment in the clerk's record however, reflects that appellant was convicted of a second degree felony and does not indicate that the conviction was enhanced. Thus, we reform the judgment to correctly reflect that appellant was convicted of a third degree felony, and that the conviction was enhanced by three prior felony convictions.

Accordingly, as reformed, the judgment of the trial court is in all other respects affirmed.

Don H. Reavis
Justice

Do not publish.