In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00074-CR
_____

**JUSTIN YOUNG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 16-24290**

**MEMORANDUM OPINION**

Justin Young (Young or Appellant) appeals his conviction for the offense of intoxication manslaughter, enhanced by a prior felony conviction to the punishment range for a first degree felony offense. On February 19, 2016, Appellant waived indictment and proceeded to trial on the offense of intoxication manslaughter (enhanced by one felony conviction). On that same date, Appellant entered an agreed plea of guilty to the offense of intoxication manslaughter and

pleaded true to the prior conviction alleged in the information, with part of the agreement being that Appellant would be sentenced to forty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice, with the provision that he could appeal the trial court's ruling on pre-trial suppression motions.

Prior to the beginning of trial and plea agreement, Appellant filed a Motion to Suppress and a First Amended Motion to Suppress. The trial court held a hearing on the suppression motions on July 2, 2015. The trial court entered an Order denying Appellant's Motion to Suppress on July 16, 2015. The trial court also entered written findings of fact and conclusions of law. Timely written Notice of Appeal was filed on March 1, 2016. We affirm.

STANDARD OF REVIEW

We review the trial court's denial of a motion to suppress under a bifurcated standard. *Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013). We afford almost total deference to the trial court's determination of facts. *Id.* (citing *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010)). The trial court is the sole arbiter of questions of fact and of the weight and credibility to give testimony. *Id.* (citing *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (quoting *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). When a trial

judge makes written findings of fact, the reviewing court examines the record in the light most favorable to the ruling and upholds those fact findings so long as they are supported by the record. *Id.* (citing *Valtierra*, 310 S.W.3d at 447). We review de novo the legal significance of the facts as found by the trial court. *Id.* (citing *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011)).

The law protecting citizens from unreasonable searches and seizures is settled. The Fourth Amendment protects citizens against unreasonable searches or unreasonable seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence for an alleged Fourth Amendment violation, the defendant bears the initial burden of rebutting the presumption that the police acted properly. *See Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009), *cert. denied*, 558 U.S. 1093 (2009); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). In evaluating a trial court's suppression ruling, we must keep in mind that the "touchstone of the Fourth Amendment is reasonableness, not individualized suspicion." *Samson v. California*, 547 U.S. 843, 855 n.4 (2006). In evaluating whether a given search was reasonable, we evaluate the "scope and manner of execution." *Maryland v. King*, 133 S. Ct. 1958, 1970 (2013).

Four witnesses testified at the suppression hearing: Officer Adam Little, Officer Daniel Norsworthy, Dr. Darioush Kavouspour, and Emily Gilman, a nurse. Prior to testimony, the State and Defendant agreed to the admission of State's Exhibit 1, a medical records affidavit and attached thirty-three pages of medical records from Christus Hospital-St. Elizabeth pertaining to Justin Young.

According to the Final Patient Care Report from the EMS (EMS Report) that was included within Exhibit 1, on January 9, 2014, at about 9:00 p.m., Beaumont EMS was dispatched to the scene of a two-car accident. When the EMS personnel arrived at the scene of the accident, they found Young inside the front seat of one of the vehicles. An entry in the medical records indicates that the other vehicle's driver was pronounced dead at the scene.

The narrative portion of the EMS Report states that Young was "combative and [] physically aggressive" with emergency personnel and began to "kick, punch, bite and spit" at personnel as they tried to render treatment to him at the scene, and Young verbally threatened EMS and police. Young was transported to the hospital, and according to the notes in Young's EMS report, "[d]uring MD assessment Pt admits to ingesting PCP earlier tonight prior to driving[.]" Officer Norsworthy accompanied Young to the hospital along with the EMS, and Norsworthy was also

4

present at the hospital with Young when Young made the statement about using PCP.

Officer Norsworthy testified that EMS and fire department personnel were already at the scene when he arrived. Norsworthy explained that he placed Young in handcuffs "for safety purposes. He was fighting like fire, [it] took a lot of us to get him under control so he didn't hurt himself or others." It was at the hospital when Norsworthy overheard Young make statements to the hospital personnel about using drugs:

> [Defense attorney] Q. Did you hear him make any statements to E.M.S.?
>
> [Officer Norsworthy] A. To the immediate staff at the hospital I heard him say that he was on PCP.

Officer Norsworthy testified that he was about five to seven feet from where the hospital staff was working on Young, when he heard Young tell the hospital personnel about the PCP. Norsworthy explained that he remained close so that if Young became aggressive again, Norsworthy could make sure nobody would get hurt. According to Officer Norsworthy, it was the medical personnel who asked Young about drugs, Norsworthy did not ask Young about any drug use, Norsworthy did not instruct any of the medical personnel to ask Young about drug

use, and Norsworthy heard what he believed were medical questions by the medical personnel.

Dr. Darioush Kavouspour also testified at the hearing. Dr. Kavouspour is a medical doctor and has been Assistant Director of trauma at Christus Hospital for the past eighteen years. After reviewing a two-page report from Exhibit 1, Dr. Kavouspour confirmed that he was on duty when Young was brought into the hospital, and that he authored and dictated the report about an hour after treating Young in the emergency room. Dr. Kavouspour testified that the notation in his report that "[t]he patient is under arrest at the present time with Beaumont PD[,]" was just an impression and something he became aware of only after he had been working with Young. Dr. Kavouspour said he "[n]ever[]" had any conversation with a police officer about the patient being under arrest at the beginning while working up the patient, and it was only at the end of his medical treatment when he had a conversation with the officer about the status of the patient. Dr. Kavouspour explained that police officers come and go in the emergency room and are routinely present for various reasons, so he would not necessarily know why they are present.

When a patient comes into the hospital, Dr. Kavouspour conducts a workup on the patient that includes obtaining information needed to treat the patient

including medical history, history of drug usage, medications, alcohol, and details of the accident. Dr. Kavouspour explained that he routinely orders a urinalysis and blood testing and such screens are done "immediately at the time of the initial evaluation[]" of the patient. He personally ordered Young's urinalysis. Dr. Kavouspour testified that the urinalysis did not have anything to do with whether the patient has admitted to drug use; it was done as part of Dr. Kavouspour's clinical exam and in relation to gathering information and vital signs, and when the patient comes in with signs of "combativeness, hypertension, change in neurological status[,]" Dr. Kavouspour orders a urinalysis.

Emily Gilman, R.N. (Gilman or Nurse Gilman), testified that she was on duty the night that Young was treated at the hospital. She recalled that a police officer was with Young at the time Young was brought into the emergency room and that Young was in handcuffs. Officer Little handed Nurse Gilman an empty vial for her to do a "mandatory blood draw[]" on Young, which she performed and then she handed the blood sample back to Officer Little, because the hospital does not do the analysis on that sample. According to Nurse Gilman, the emergency room physician would have performed a physical exam on the patient and ordered any tests. While she could not recall whether a urinalysis was done on Young, Gilman indicated that the records would reflect that information, and she would

7

have just followed the orders of the physician. Nurse Gilman testified that when Young first arrived at the hospital, Young's heart rate was "very high" and his blood pressure was also high, both of which would be "red flags[]" that could indicate "anything from internal bleeding to drugs or alcohol." According to Nurse Gilman, a urine screen would be helpful in assessing what was causing the high blood pressure or heart rate. Additionally, Gilman confirmed that no one from the Beaumont Police Department asked her to obtain a urine sample from Young.

According to Beaumont Police Officer Daniel Norsworthy, on the evening of the accident, around 9:00 p.m., Young was driving a truck that was involved in a bad accident. The cab of Young's truck was severed from the truck bed in the accident. Young's truck collided with a car driven by Alexis Neal, who died as a result of the accident. Officer Little testified that Young was combative at the scene of the accident, and the police handcuffed Young and placed him under arrest at that time. Officer Little did not hear Young make any statements at the scene because the Officer was "too busy fighting with [Young] and trying to get E.M.S. to give [Young] the shot for the excited delirium to calm him down." Officer Little did not read Young his *Miranda* rights or question Young at the scene. Officer Little learned later from Officer Norsworthy that Young made statements about drug usage. Officer Norsworthy rode with Young in the EMS

8

vehicle to the hospital, but Officer Little did not. Officer Little drove to the hospital after gathering more facts from the accident scene.

While at the hospital, Officer Little gave Nurse Gilman a tube for a mandatory blood draw, and the nurse performed the blood draw and returned the vial to Officer Little, and he sent the vial for testing. Officer Little did not recall speaking with Dr. Kavouspour. Officer Little did not recall when the medical personnel ordered a urinalysis, and he did not know about the urinalysis until after the district attorney told him a urinalysis had been done. According to Officer Little, neither he nor Officer Norsworthy had any conversation with the hospital personnel about the urinalysis. At the hospital, Officer Little read Young his *Miranda* rights and statutory warning, and because Young stated he no longer wanted to speak with the officer, Officer Little did not question Young about the accident.

Officer Little testified that a urinalysis is something that the doctors or nurses "would perform on their own for their own medical deal." Over all the years of his experience as a police officer, he has never asked for a urine sample, and it would not have been a practice of the BPD to ask for a urine specimen.

Officer Little testified that, at one point that night, Young asked Officer Little what he was being charged with, and Officer Little told Young about the

crash and that someone was killed, but Young did not seem to believe or understand him. Little said that five minutes later, Young asked the same question. According to Officer Little, Young appeared incoherent at times, and the Officer did not question Young. Officer Little also testified that he could "smell the aroma of PCP emitting from [Young's] body and [] breath."

The trial court entered an "Order on Defendant's Motion to Suppress" wherein the trial court denied the motion to suppress and included findings as follows:

> Pursuant to the parties' joint request, the Court's ruling on Defendant's suppression motion does not encompass the admissibility of test results from the mandatory blood draw by hospital personnel at the behest of law enforcement due to the fact the Texas Court of Criminal Appeals has granted the State's motion for rehearing in *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014), *reh'g granted*, Feb. 25, 2015, the seminal case on admissibility of mandatory blood draws.

> Therefore, the Court's ruling is limited to the admissibility of the remaining evidentiary items at issue, to-wit: (1) test results of the defendant's urine specimen, and (2) Defendant's purportedly incriminating statements made to hospital personnel allegedly overheard by law enforcement.

> . . . .

> The record evidence indicates that Defendant was brought to the hospital for medical treatment after he had been arrested for operating a vehicle while intoxicated at the scene of a fatal automobile collision.

10

In addition to the normal complement of hospital personnel actively engaged in provi[di]ng medical treatment to Defendant, law enforcement officers were also present in the examination area since Defendant was handcuffed and under arrest at that time.

Proper medical treatment required hospital personnel to gather information from Defendant and perform tests and analyses for purposes of diagnosing his condition at that time.

The fact that law enforcement officers were also present when hospital personnel were treating Defendant, and that statements made by Defendant during the normal course of this medical treatment may have been overheard by these law enforcement officers, were unavoidable results of the circumstances existing at that point in time.

. . . .

From the foregoing record facts, the Court FINDS that the treating physician, and those hospital personnel working with and for him, acted independent of any law enforcement officer then present, and within their duties in medically treating Defendant.

The Court further FINDS that the medical procedures at issue -- Defendant's urine test, and the gathering of Defendant's medical history and then-existing condition by hospital personnel -- were performed solely for purposes of medically treating Defendant; and at no time while diagnosing and treating the Defendant did hospital personnel ever act in conjunction with, or as an agent for, law enforcement.

The record evidence clearly demonstrates that hospital personnel were exclusively concerned with Defendant's medical care and acted only to diagnose and treat Defendant's injuries. No credible and reliable evidence has been presented to establish any collusion or complicity by hospital personnel with law enforcement in this matter.

. . . .

11

Applying clearly controlling law to the record facts described above, the Court concludes that law enforcement and hospital personnel conducted their activity in accordance with their respective professional duties and obligations, in the necessary presence of each other, but, most importantly, mutually <u>exclusive</u> of each other. The Court, therefore, DENIES the Defendant's Motion to Suppress with regard to the results of Defendant's urine tests, and with regard to any statements made by Defendant to hospital personnel during their diagnosis and treatment of Defendant.

ISSUES ON APPEAL

Appellant presents four issues on appeal. In his first and second issues, Appellant argues that the trial court committed reversible error by denying Appellant's motion to suppress the statements made by Appellant to EMS about his drug use in violation of his rights under the Fourth Amendment to the United States Constitution as well as under Article 1, Section 9 of the Texas Constitution[1] and Articles 28.01 and 38.23[2] of the Texas Code of Criminal Procedure. In issues three and four, Appellant argues the trial court committed reversible error by denying Appellant's Motion to Suppress the test results of the urine sample obtained from Appellant at the hospital because Appellant contends the test was

---

[1] Tex. Const. Art. I, § 9 ("The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.").

[2] *See* Tex. Code Crim. Proc. art. 28.01 (West 2006) (pretrial proceedings), art. 38.23 (West 2005) (Texas exclusionary rule).

done in violation of his rights under the Fourth Amendment to the United States Constitution as well as under Article 1, Section 9 of the Texas Constitution and Articles 28.01 and 38.23 of the Texas Code of Criminal Procedure. Appellant contends that the statements and urinalysis should have been suppressed because the State failed to prove the warrantless arrest was supported by probable cause and failed to show that the medical treatment was administered with his consent, thereby rendering the medical personnel agents of law enforcement and causing the evidence to have been illegally obtained. We overrule all four issues.

ANALYSIS

It is undisputed that Appellant was arrested without a warrant. Additionally, the record indicates that the State did not have a warrant for the collection of Young's urine and the urinalysis. Therefore, Young satisfied his initial burden when he established that the search or seizure occurred without a warrant. *See Amador*, 275 S.W.3d at 878. The burden then shifted to the State to establish that the search and the seizure were reasonable. *Id.*; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

In order to preserve a complaint for appellate review, a party must present the trial court with a timely request, objection, or motion stating the specific

grounds for the desired ruling if those grounds are not apparent from the context and he must also obtain a ruling. *See* Tex. R. App. P. 33.1(a)(1)(A); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). An issue on appeal that does not comport with the objection made at trial presents nothing for appellate review. *See Lucio v. State*, 351 S.W.3d 878, 900 (Tex. Crim. App. 2011) (citing *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998)); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). On appeal, Appellant contends that both his warrantless arrest and his urinalysis were not supported by probable cause. Appellant did not assert this argument in the trial court in his Motions to Suppress nor did he make this argument at the suppression hearing.

On appeal, Appellant also argues that the State failed to prove that he consented to the medical treatment or that he needed emergency care. Appellant argues that, under Sections 74.104 and 74.105 of the Texas Civil Practice and Remedies Code, his consent for medical care is required, except to the extent emergency medical treatment was necessary under section 773.008 of the Texas Health and Safety Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.104, 74.105 (West 2011); Tex. Health & Safety Code Ann. § 773.008 (West 2010). According

14

to Appellant, he was not in need of emergency care and he never consented to the medical treatment, and therefore

> . . . these actions and words by the police created an agency relationship with the medical personnel when there was no evidence that Appellant consented to such treatment and, without such consent, Appellant should have been in jail rather than being treated by the medical personnel and evidence being gathered against him.

Young generally asserted at the hearing and in his motions that the taking of the urine and questioning of Young by hospital personnel violated the Fourth Amendment because the hospital personnel were acting as agents for law enforcement when they did so. However, Young did not present any arguments pursuant to sections 74.104 or 74.105 of the Texas Civil Practice and Remedies Code, nor did he argue that there was a failure to establish the need for emergency medical treatment under section 773.008 of the Texas Health and Safety Code. At no point during the suppression hearing or before the trial court did Young argue or contend that the Officers lacked probable cause to arrest him or that the hospital personnel needed or lacked probable cause to ask him questions or order medical tests as part of their treatment of Young. Therefore, Young failed to preserve these complaints. *See* Tex. R. App. P. 33.1(a); *see Lucio*, 351 S.W.3d at 900; *Ibarra*, 11 S.W.3d at 197; *Wright*, 154 S.W.3d at 241.

15

Nevertheless, even if Young had preserved such arguments, we find the arguments unpersuasive. Young's complaint before the trial court focused solely around his contention that the warrantless taking of the urine sample and urinalysis[3] violated his Fourth Amendment right as recognized by the United States Supreme Court case of *Missouri v. McNeely*[4] and the Texas Court of Criminal Appeals decision in *State v. Villarreal*.[5] And, Young argued in his motions that, as in *Ferguson v. City of Charleston*,[6] the collection and testing of his urine and the questioning of Young by the hospital and medical personnel, were done for the purpose of the collection of evidence for criminal law enforcement purposes in violation of his Fourth Amendment. Young makes similar arguments on appeal, as

---

[3] Pursuant to the joint request of the State and Young, the trial court did not make a ruling on the admissibility of the test results taken from the mandatory blood draw. Therefore, we limit our discussion to the (1) test results from Young's urine specimen, and (2) Young's purportedly incriminating statements made to hospital personnel allegedly overheard by law enforcement.

[4] *Missouri v. McNeely*, 133 S. Ct. 1552 (2013).

[5] *State v. Villarreal*, 475 S.W.3d 784 (Tex. Crim. App. 2015) (per curiam).

[6] *Ferguson v. City of Charleston*, 532 U.S. 67 (2001).

to the urine test as well as to the statement he made to medical personnel, therefore we address his arguments together.[7]

Unlike *Villarreal*, this case does not involve a situation where the State requested the medical personnel to obtain a urinalysis as part of a mandatory procedure. Additionally, unlike the facts in *Ferguson*, the medical personnel did not ask Young questions or order the urinalysis solely for the specific purpose of gathering incriminating information from Young to be used in a criminal case or prosecution. Rather, the trial court determined that the medical procedures at issue—the urine test and gathering of information from Young by the treating physician and medical personnel—were "performed solely for purposes of medically treating Defendant[]" and the trial court found there was "[n]o credible and reliable evidence [] presented to establish any collusion or complicity by

---

[7] Young has not raised a Fifth Amendment challenge to the evidence. Young did not provide a basis in his Appellate Brief for his statement that the trial court's ruling violated Article I, Section 9 of the Texas Constitution and Articles 28.01 and 38.23 of the Texas Code of Criminal Procedure, separate from his argument pertaining to the Fourth Amendment. Briefs asserting rights under the Texas Constitution as compared to the Federal Constitution should generally specify any separate grounds under federal and state law. *McCambridge v. State,* 712 S.W.2d 499, 501-02 n.9 (Tex. Crim. App. 1986). If a party fails to provide authority in support of an assertion then the issue has not been properly preserved for review on appeal. Tex. R. App. 38.1(i) (providing that appellant's brief must cite the record and appropriate authority). Therefore, we need not decide whether the trial court erred under Article 1, Section 9 of the Texas Constitution and Articles 28.01 and 38.23 of the Texas Code of Criminal Procedure. *See* Tex. R. App. P. 47.1.

hospital personnel with law enforcement in this matter." Because these determinations turned on the trial court's evaluation of the testimony and credibility of Dr. Kavouspour, Nurse Gilman, and the Officers, and are supported by the record, we are required to grant almost total deference to these findings. *See Baird*, 398 S.W.3d at 226.

In *Wilkerson v. State*, 173 S.W.3d 521 (Tex. Crim. App. 2005), the Court examined whether, in the context of the Fifth Amendment, a CPS worker was an agent for law enforcement. 173 S.W.3d at 526-33. Therein, the Court held that "only when a CPS investigator (or other non-law enforcement state agent) is acting in tandem with police to investigate and gather evidence for a criminal prosecution are [*Miranda*] warnings required." *Id*. at 523. Because there was no evidence that the CPS worker was "acting in tandem" with or at the direction of the police, the trial court did not abuse its discretion by admitting the statements the defendant made to the CPS worker. *Id*. at 523-24. In its analysis, the Court noted that the defendant's Fifth Amendment right not to be questioned or compelled to be a witness against himself and to receive *Miranda*[8] rights applies to custodial interrogations by "law enforcement officers or their agents." *Id*. at 527. And, while it may sometimes be difficult to determine whether the non-law enforcement

---

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

18

person acted as an agent for law-enforcement, the courts should look for information in the record about the relationship between the police and potential police agent and determine "[w]as [the] custodial interview conducted (explicitly or implicitly) on behalf of the police for the primary purpose of gathering evidence or statements to be used in a later criminal proceeding against the [defendant]?" *Id.* at 530-31.

We also find the case of *State v. Huse*, No. PD-0433-14, 2016 Tex. Crim. App. LEXIS 72 (Tex. Crim. App. Apr. 13, 2016), to be instructive. In *Huse*, the Court examined the use of a grand jury subpoena to obtain the defendant's medical records which included a blood analysis. Following a traffic accident, the defendant refused the officer's request for a specimen of breath or blood for a blood alcohol analysis, but the officer transported the defendant to hospital for treatment. 2016 Tex. Crim. App. LEXIS 72, at **3-4. At the hospital, blood was drawn by the medical personnel for medical purposes. *Id.* at *4. After examining relevant *criminal* statutes concerning procedures for grand jury subpoenas, the Court of Criminal Appeals concluded that such evidence need not be suppressed where the State obtained the medical records in the absence of any specific statutory violation. The Court explained that, as previously examined in *State v. Hardy*, 963 S.W.2d 516 (Tex. Crim. App. 1997), "the State neither extracted

19

Appellee's blood nor instigated the blood alcohol analysis[.]" *Id.* at 16. The Court explained that "'whatever interests society may have in safeguarding the privacy of medical records [in general], they are not sufficiently strong to require protection of blood-alcohol test results taken by hospital personnel solely for medical purposes after a traffic accident.'" *Id.* at 18 (quoting *Hardy*, 963 S.W.2d at 527).

We find Appellant's argument that he did not give consent for the medical treatment and his argument that his care was not medically necessary for emergency care to be inapposite. First, we note that Young did not make these arguments to the trial court. Second, whether he gave consent to medical treatment as defined by civil statutes, or whether the care rendered by the emergency room personnel was necessary for life-threatening injuries, would not be determinative of our inquiry in this criminal case. *See generally Huse*, 2016 Tex. Crim. App. LEXIS 72 (after examining relevant *criminal* statutes, such evidence need not be suppressed where the State obtained the medical records in the absence of any specific statutory violation); *Murray v. State*, 245 S.W.3d 37 (Tex. App.—Austin 2007, pet. ref'd) (no error to deny motion to suppress test results of DWI arrestee's blood that was performed by hospital staff for purpose of medical treatment; also holding that HIPAA does not protect medical records from subpoena in a criminal prosecution); *see also Garcia v. State*, 95 S.W.3d 522, 526-27 (Tex. App.—

20

Houston [1st Dist.] 2002, no pet.) (concluding that defendant did not have a reasonable expectation of privacy in the blood-alcohol test results obtained for medical purposes following an accident); *Knapp v. State*, 942 S.W.2d 176, 179 (Tex. App.—Beaumont 1997, pet. ref'd) (appellant's privacy rights were not violated when medical records containing blood alcohol levels, obtained by grand jury subpoena, were admitted at trial).

In this case, Appellant was transported by EMS from the scene of a horrific crash in which the cab of his truck had separated from its bed, and the driver of the other vehicle was killed. According to the EMS report, Appellant had "Altered Consciousness[,]" was trapped inside his vehicle until he "violently removed himself from [the] cab of the truck via the broken rear window in the cab[,]" and was combative towards EMS personnel. The witnesses at the suppression hearing testified that Young seemed incoherent both at the scene of the accident and at the hospital, smelled of PCP, asked the same questions repeatedly, and had physical signs of distress that included a rapid heartbeat and elevated blood pressure. Dr. Kavouspour testified that he questioned the patient and ordered tests to assess Young's condition as necessary for medical treatment and not for law enforcement purposes.

Viewing the evidence in the light most favorable to the trial court's rulings relating to the complained-of evidence, we conclude that the trial court's ruling was well within the proper exercise of its discretion. The record fully supports the trial court's finding that statements Young made in response to questioning by hospital personnel, as well as the urinalysis, were independently obtained by the medical personnel for purposes of rendering medical treatment to Young. The trial court did not abuse its discretion in denying the motions to suppress with respect to the complained-of evidence.

We overrule all of Young's issues and affirm the Judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 4, 2016
Opinion Delivered August 24, 2016
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.